**In re SPALDING SPORTS WORLDWIDE, INC.**

**Misc. Docket No. 595.**

United States Court of Appeals, Federal Circuit.

Feb. 11, 2000.

---

Matthew G. McAndrews, McAndrews, Held & Malloy, Ltd., of Chicago, Illinois, argued for petitioner. With him on the petition was George P. McAndrews.

John W. Chestnut, Tilton, Fallon, Lungmus & Chestnut, of Chicago, Illinois, argued for respondent.

Before LOURIE, RADER, and BRYSON, Circuit Judges.

## ORDER

LOURIE, Circuit Judge.

Spalding Sports Worldwide, Inc. petitions this court for a writ of mandamus directing the United States District Court for the District of Massachusetts to vacate the magistrate judge's June 9, 1999 order requiring Spalding to produce the invention record for its U.S. Patent 5,310,178, in discovery in a patent infringement suit against Wilson Sporting Goods, Co. ("Wilson"). *See Spalding & Evenflo Cos.[1] v. Wilson Sporting Goods Co.*, No. 97–30275–MAP (D. Mass. June 9, 1999) (order granting defendant's motion to compel). Because we conclude that the invention record of the '178 patent is protected by the attorney-client privilege, and the denial of that privilege by the district court is properly remedied by mandamus, we grant Spalding's petition for a writ of mandamus.

## BACKGROUND

Spalding is the assignee of the '178 patent, which issued on May 10, 1994 and is directed to a basketball with a polyurethane cover. The issues raised in this petition do not involve the claims or any other aspect of the patent's subject matter, but rather center on the applicability of the attorney-client privilege to the invention record submitted to Spalding's corporate legal department on February 28, 1992 by Alan Walker and Joseph Baltron is, the two inventors named on the '178 patent.

Spalding sued Wilson for infringement of the '178 patent in the United States District Court for the District of Massachusetts. During discovery, Wilson filed a motion to compel the production of the invention record.[2] Spalding asserted that the invention record was not discoverable because it was protected by the attorney-client privilege. In response, Wilson argued that the invention record should be produced because Spalding committed "fraud on the patent office." *Id.* at 5. On June 9, 1999, the magistrate judge granted Wilson's motion, holding that: (1) Spalding had not met its burden of demonstrating the applicability of the attorney-client privilege, and (2) even if the attorney-client privilege were to apply, Wilson was nonetheless entitled to discovery of the invention record because it had made a *prima facie* showing of inequitable conduct. *See id.* at 5–6. With respect to the applicability of the attorney-client privilege, the magistrate judge observed that Spalding's invention record did not appear to be primarily legal in nature, and that it revealed discoverable technical information, not an attorney-client communication. *See id.* at 4. The magistrate judge further noted:

> [I]t does not appear that Spalding's legal department addressed the product's patentability at a patent committee meeting

---

1. The named plaintiff, Spalding & Evenflo Companies, Inc., changed its name to Spalding Sports Worldwide, Inc., effective September 1, 1998.

2. Invention records are standard forms generally used by corporations as a means for inventors to disclose to the corporation's patent attorneys that an invention has been made and to initiate patent action. They are usually short documents containing space for such information as names of inventors, description and scope of invention, closest prior art, first date of conception and disclosure to others, dates of publication, etc.

or took any action on the information contained in the document itself. For all the court knows, the document was meant primarily as an aid in completing the patent application rendering the attorney a mere "conduit" to the patent office.

*Id.*

With respect to Wilson's allegation of inequitable conduct, the magistrate judge concluded that Spalding's invention record was discoverable, apparently based on the rationale that any attorney-client privilege was abrogated by the crime-fraud exception, and because Wilson had "shown that a material misrepresentation may have been made to the PTO, which resulted in the issuance of the patent at issue." *Id.* at 6. Further concluding that the different fraud standards proposed by the parties were essentially the same, the magistrate judge rejected Spalding's argument that Wilson had to demonstrate common law fraud, as opposed to inequitable conduct, in order to pierce the attorney-client privilege. *See id.* The district court then denied Spalding's motion for reconsideration, holding that the magistrate judge's ruling was neither clearly erroneous, nor contrary to law.

Spalding petitioned this court for a writ of mandamus directing the district court to vacate the magistrate judge's order requiring Spalding to produce the invention record. We have authority to issue all necessary or appropriate writs pursuant to 28 U.S.C. § 1651(a) (1994).

## DISCUSSION

### A. *Choice of Law*

■ Before determining whether Spalding's invention record is protected by the attorney-client privilege, we must first decide whether to apply our own law or that of the First Circuit. Spalding argues that we should apply Federal Circuit law, because the issue whether the attorney-client privilege applies to communications between inventors and patent attorneys is one of substantive patent law and should be subject to a uniform national standard. Wilson responds that this issue does not implicate substantive patent law, and that we should apply the law of the First Circuit.

■ We agree with Spalding that our own law applies to the issue whether the attorney-client privilege applies to an invention record prepared and submitted to house counsel relating to a litigated patent. In reviewing district court judgments, we apply the law of the circuit in which the district court sits with respect to nonpatent issues, but we apply our own law to issues of substantive patent law. *See Institut Pasteur v. Cambridge Biotech Corp. (In re Cambridge Biotech Corp.),* 186 F.3d 1356, 1358, 51 USPQ2d 1321, 1329 (Fed. Cir.1999). Furthermore, we have held that "a procedural issue that is not itself a substantive patent law issue is nonetheless governed by Federal Circuit law if the issue pertains to patent law, if it bears an essential relationship to matters committed to our exclusive [jurisdiction] by statute, or if it clearly implicates the jurisprudential responsibilities of this court in a field within its exclusive jurisdiction." *Midwest Indus., Inc. v. Karavan,* 175 F.3d 1356, 1359, 50 USPQ2d 1672, 1675 (Fed. Cir.1999) (*en banc* in relevant part) (internal citations and quotation marks omitted).

Applying these standards, we have held, for example, that Federal Circuit law applies when deciding whether particular written or other materials are discoverable in a patent case, because they relate to an issue of substantive patent law. *See id.* (citing *Truswal Sys. Corp. v. Hydro–Air Eng'g, Inc.,* 813 F.2d 1207, 1212, 2 USPQ2d 1034, 1038 (Fed.Cir.1987) ("[A] determination of relevance implicates the substantive law of patent validity and infringement. Hence, we look to Federal Circuit law.")). Similarly, in the present case, a determination of the applicability of the attorney-client privilege to Spalding's invention record clearly implicates, at the very least, the substantive patent issue of

inequitable conduct. We therefore apply Federal Circuit law in determining whether the attorney-client privilege applies.

In *In re Regents of the University of California*, 101 F.3d 1386, 40 USPQ2d 1784 (Fed.Cir.1996) (hereinafter "*UC Regents*"), this court granted a writ of mandamus after concluding that, under Seventh Circuit law, communications between a licensor and the attorneys of its licensee were protected by the attorney-client privilege. We applied the law of the regional circuit because the issue in that case, whether a licensor and a licensee are joint clients for purposes of privilege under the community of interest doctrine, was not unique to patent law. *See id.* at 1390 n. 2, 40 USPQ2d at 1787 n. 2 ("[F]or procedural matters that are not unique to patent issues, we apply the perceived law of the regional circuit."). That issue concerned parties to a contract; any patent involved was irrelevant to the question of privilege. However, the issue in the present case, whether the invention record is protected by the attorney-client privilege, is unique to patent law because the invention record relates to an invention submitted for consideration for possible patent protection; it clearly implicates substantive patent law. We thus conclude that the court's choice of law in the *UC Regents* case is inapplicable here.

## B. *Writ of Mandamus*

■ We next address the parties' arguments concerning the appropriateness of mandamus as a remedy. Spalding argues that mandamus is appropriate, given the importance of protecting the attorney-client privilege. Wilson responds that mandamus is not appropriate in this case, because there is no important issue of first impression, and Spalding has failed to show that there was an abuse of discretion or usurpation of authority.

■ We agree with Spalding that the remedy of mandamus is appropriate in this case. A writ of mandamus may be granted to overturn a district court order "only

when there has been a clear abuse of discretion or usurpation of judicial authority in the grant or denial of the order." *Connaught Lab., Inc. v. SmithKline Beecham P.L.C.*, 165 F.3d 1368, 1370, 49 USPQ2d 1540, 1541 (Fed.Cir.1999); *see also Schlagenhauf v. Holder*, 379 U.S. 104, 110, 85 S.Ct. 234, 13 L.Ed.2d 152 (1964). The petitioner has the burden of establishing "that its right to issuance of the writ is clear and indisputable, . . . and that it lacks adequate alternative means to obtain the relief sought." *UC Regents*, 101 F.3d at 1387, 40 USPQ2d at 1785 (citing *Allied Chem. Corp. v. Daiflon, Inc.*, 449 U.S. 33, 35, 101 S.Ct. 188, 66 L.Ed.2d 193 (1980); *Mallard v. United States Dist. Court*, 490 U.S. 296, 309, 109 S.Ct. 1814, 104 L.Ed.2d 318 (1989)). Mandamus is an appropriate remedy when a petition is based on a substantial allegation of usurpation of power, and raises an issue of first impression. *See Schlagenhauf*, 379 U.S. at 111, 85 S.Ct. 234. Furthermore, "[a] writ of mandamus may be sought to prevent the wrongful exposure of privileged communications." *UC Regents*, 101 F.3d at 1387, 40 USPQ2d at 1785.

The question raised by this petition, whether the attorney-client privilege applies to an invention record submitted for patent evaluation, is an important issue of first impression. Moreover, as we explained in *UC Regents*, when a writ of mandamus is sought to prevent the wrongful exposure of privileged communications, the remedy of mandamus is appropriate "because maintenance of the attorney-client privilege up to its proper limits has substantial importance to the administration of justice, and because an appeal after disclosure of the privileged communication is an inadequate remedy." *Id.* In addition, the immediate resolution of this issue will avoid the development of discovery practices with respect to invention records that might undermine the proper maintenance of the attorney-client privilege. Accordingly, we conclude that mandamus is appropriate, that Spalding's right to issuance

of the writ is clear and indisputable, and that it lacks adequate alternative means to obtain the relief sought. *See id.*

### C. *The Attorney–Client Privilege*

■ Having determined that mandamus is appropriate, our decision whether to grant Spalding's petition ultimately rests on whether the attorney-client privilege applies to the invention record of the '178 patent. Spalding argues that the invention record constitutes a confidential attorney-client communication because it was prepared for the purpose of securing legal advice. Spalding contends that even though the invention record may have contained technical information, it nonetheless is protected by the attorney-client privilege because it requested legal advice concerning the patentability of the invention and served as an aid in completing the patent application. Spalding emphasizes that its invention record was sent to the corporate legal department.

Wilson responds that Spalding failed to prove that its invention record was made for the purpose of obtaining legal advice, and therefore failed to establish the applicability of the attorney-client privilege. Wilson argues that even if the invention record was in fact submitted to Spalding's "patent committee," there was no evidence that the patent committee "acted as a lawyer" by rendering *legal* advice, as opposed to making *business* decisions. Wilson also contends that even if a portion of the invention record was submitted for the purpose of obtaining legal advice, the section that lists prior art should nevertheless be disclosed, because it does not ask for legal advice.

■ We agree with Spalding that its invention record is protected by the attorney-client privilege. Whether the attorney-client privilege applies should be determined on a case-by-case basis. *See Upjohn Co. v. United States,* 449 U.S. 383, 396, 101 S.Ct. 677, 66 L.Ed.2d 584 (1981). The privilege "exists to protect not only the giving of professional advice to those who can act on it, but also the giving of information to the lawyer to enable him to give sound and informed advice." *Id.* at 390, 101 S.Ct. 677; *see also Shearing v. Iolab Corp.,* 975 F.2d 1541, 1546, 24 USPQ2d 1133, 1138 (Fed.Cir.1992) ("[T]he privilege protects a client's confidential communications to an attorney necessary to obtain legal counseling.") (citing *Fisher v. United States,* 425 U.S. 391, 403, 96 S.Ct. 1569, 48 L.Ed.2d 39 (1976)). Accordingly, the central inquiry is whether the communication is one that was made by a client to an attorney for the purpose of obtaining legal advice or services. *See Genentech, Inc. v. United States Int'l Trade Comm'n,* 122 F.3d 1409, 1415, 43 USPQ2d 1722, 1727 (Fed.Cir.1997) (citing *American Standard Inc. v. Pfizer Inc.,* 828 F.2d 734, 745, 3 USPQ2d 1817, 1824 (Fed.Cir.1987)).

■ In determining whether the attorney-client privilege applies, we first note that Spalding's invention record constitutes a communication to an attorney. As confirmed by the district court's own review, the invention record was submitted by the inventors of the '178 patent to Spalding's corporate *legal* department. *See Spalding,* slip op. at 3. Furthermore, the communication was made for the purpose of obtaining legal advice. According to the declaration of Spalding's current house patent counsel, "[i]t was, and is, the policy at Spalding for Spalding's patent counsel, and/or outside patent counsel to whom the invention is delegated for evaluation, to refer to the INVENTION RECORD for the purpose of making patentability determinations." Covello Decl. ¶ 7. We therefore hold that an invention record constitutes a privileged communication, as long as it is provided to an attorney "for the purpose of securing primarily legal opinion, or legal services, or assistance in a legal proceeding." *Knogo Corp. v. United States,* 213 USPQ 936, 940, 1980 WL 39083 (Ct.Cl. Trial Div.1980) (rejecting the characterization of patent attorneys as mere "conduits" to the PTO); *see also Sperry v.*

*Florida,* 373 U.S. 379, 383, 83 S.Ct. 1322, 10 L.Ed.2d 428 (1963) ("[T]he preparation and prosecution of patent applications for others constitutes the practice of law."). Spalding's invention record meets that test.

■ Although Wilson contends that the portion of Spalding's invention record that lists prior art should be disclosed because it does not ask for legal advice, we do not consider that it is necessary to dissect the document to separately evaluate each of its components. It is enough that the overall tenor of the document indicates that it is a request for legal advice or services. Moreover, it is not necessary to expressly request confidential legal assistance when that request is implied. *See, e.g., In re Sealed Case,* 737 F.2d 94, 102 (D.C.Cir.1984); Paul R. Rice, *Attorney–Client Privilege in the United States* § 7:1 (1993). Finally, to the extent that Spalding's invention record may contain technical information, or refer to prior art, the inclusion of such information does not render the document discoverable, because requests for legal advice on patentability or for legal services in preparing a patent application necessarily require the evaluation of technical information such as prior art. *See Knogo,* 213 USPQ at 941. In *Knogo,* it was explained:

> The fact that much of the technical information in one form or another finds its way into the patent application, to be made public when the patent issues, should not preclude the assertion of the privilege over the communication in which that information was disclosed to the attorney. If an attorney-client communication could be discovered if it con-

tained information known to others, then it would be the rare communication that would be protected and, in turn, it would be the rare client who would freely communicate to an attorney.

*Id.* (citation omitted). In any event, an attorney cannot evaluate patentability or prepare a competent patent application without knowing the prior art and obtaining relevant technical information from the inventors. Accordingly, since Spalding's invention record was prepared and submitted primarily for the purpose of obtaining legal advice on patentability and legal services in preparing a patent application, we conclude that it is privileged in its entirety.[3]

### D. The Crime–Fraud Exception

■ Having determined that the invention record of Spalding's patent is protected by the attorney-client privilege, we next decide whether that privilege is abrogated by the crime-fraud exception. Spalding argues that in order for Wilson to pierce the attorney-client privilege, it must make a *prima facie* showing of common law or "*Walker Process*" fraud. *See Walker Process Equip., Inc. v. Food Mach. & Chem. Corp.,* 382 U.S. 172, 86 S.Ct. 347, 15 L.Ed.2d 247 (1965). Spalding contends that Wilson's allegation of inequitable conduct is insufficient to vitiate the attorney-client privilege because inequitable conduct, unlike common law fraud, does not require proof of a clear intent to deceive the examiner. Spalding further argues that even if Wilson did make a *prima facie* showing of common law fraud, the invention record itself is not discoverable be-

---

**3.** We are aware of several district court opinions that have held that technical information communicated to an attorney, and documents relating to the prosecution of patent applications are non-privileged, based on the rationale that the attorney is acting as a mere "conduit" between his client and the Patent and Trademark Office ("PTO"). *See, e.g., Jack Winter, Inc. v. Koratron Co.,* 50 F.R.D. 225, 228, 166 USPQ 295, 297–98 (N.D.Cal.1970); *see also, e.g., Howes v. Medical Components,*

*Inc.,* 7 USPQ2d 1511, 1512 (E.D.Pa.1988); *Detection Sys., Inc. v. Pittway Corp.,* 96 F.R.D. 152, 155, 220 USPQ 716, 717 (W.D.N.Y. 1982); *Sneider v. Kimberly–Clark Corp.,* 91 F.R.D. 1, 5 (N.D.Ill.1980); *Choat v. Rome Indus., Inc.,* 462 F.Supp. 728, 732, 203 USPQ 355, 358 (N.D.Ga.1978). However, these cases did not deal specifically with invention records, and moreover, they are not binding on this court. We conclude that the better rule is the one articulated in this case.

cause it was not made in furtherance of a crime or fraud.

Wilson responds that it has established a *prima facie* case of both inequitable conduct and common law fraud, as the standards for both types of fraud are substantially the same, if not identical. Wilson further contends that direct evidence of intent is not necessary to prove common law fraud, and that in this case, intent was properly inferred by the district court. Wilson finally argues that, if the invention record was prepared for the purpose of obtaining legal advice, as asserted by Spalding, and if prior art was included in the invention record but omitted from the patent application and concealed from the PTO, as asserted by Wilson, then the invention record must have been made in furtherance of fraud on the PTO.

■ We agree with Spalding that the crime-fraud exception does not apply to this invention record. To invoke the crime-fraud exception, a party challenging the attorney-client privilege must make a *prima facie* showing that the communication was made "in furtherance of" a crime or fraud. *See, e.g., United States v. Reeder,* 170 F.3d 93, 106 (1st Cir.1999); *In re Richard Roe, Inc.,* 168 F.3d 69, 71 (2nd Cir.1999); *In re Grand Jury Subpoenas,* 144 F.3d 653, 660 (10th Cir.1998); *United States v. White,* 887 F.2d 267, 271 (D.C.Cir.1989); *Pfizer Inc. v. Lord,* 456 F.2d 545, 550 (8th Cir.1972). This court has previously distinguished "inequitable conduct" from common law or *"Walker Process"* fraud. *See Nobelpharma AB v. Implant Innovations, Inc.,* 141 F.3d 1059, 46 USPQ2d 1097 (Fed.Cir.1998). In *Nobelpharma,* we explained:

> Consistent with the Supreme Court's analysis in *Walker Process,* ... we have distinguished "inequitable conduct" from *Walker Process* fraud, noting that inequitable conduct is a broader, more inclusive concept than the common law fraud needed to support a *Walker Process* counterclaim.... Inequitable conduct in fact is a lesser offense than common

law fraud, and includes types of conduct less serious than "knowing and willful" fraud.

\* \* \* \* \* \*

> Because severe penalties are usually meted out to the party found guilty of such conduct, [common law] fraud is generally held not to exist unless the following indispensable elements are found to be present: (1) a representation of a material fact, (2) the falsity of that representation, (3) the intent to deceive or, at least, a state of mind so reckless as to the consequences that it is held to be the equivalent of intent (scienter), (4) a justifiable reliance upon the misrepresentation by the party deceived which induces him to act thereon, and (5) injury to the party deceived as a result of his reliance on the misrepresentation.

*Id.* at 1069–70, 46 USPQ2d at 1106 (citations and footnote omitted).

■ Addressing the issue of reliance by the PTO on alleged misrepresentations or omissions, we further explained:

> A finding of *Walker Process* fraud requires higher threshold showings of both intent and materiality than does a finding of inequitable conduct. Moreover, unlike a finding of inequitable conduct ... a finding of *Walker Process* fraud may not be based upon an equitable balancing of lesser degrees of materiality and intent. Rather, it must be based on independent and clear evidence of deceptive intent together with a clear showing of reliance, *i.e.,* that the patent would not have issued but for the misrepresentation or omission. Therefore, for an omission such as a failure to cite a piece of prior art to support a finding of *Walker Process* fraud, the withholding of the reference must show evidence of fraudulent intent. A mere failure to cite a reference to the PTO will not suffice.

*Id.* at 1070–71, 46 USPQ2d at 1106–07. Thus, inequitable conduct is not by itself common law fraud.

In the present case, despite the district court's statement that "Wilson has shown that a material misrepresentation may have been made to the PTO, which resulted in the issuance of the patent at issue," *Spalding*, slip op. at 6, we conclude that Wilson has not made a *prima facie* showing that the invention record was made in furtherance of fraud during the prosecution of the '178 patent. Although the party seeking to overcome the attorney-client privilege need not conclusively prove fraud, or necessarily submit direct evidence to make a *prima facie* showing of fraud, Wilson's mere allegation of Spalding's failure to cite a reference to the PTO will not suffice. *See Nobelpharma,* 141 F.3d at 1071, 46 USPQ2d at 1107. In actuality, a citation of prior art in an invention record in the absence of evidence of a purpose to conceal that art would seem to be the opposite of furthering fraud; it informs the patent attorney or agent of the closest prior art. What the attorney then does with that information is another matter, but inclusion of the closest prior art in an invention record does not alone provide evidence of furthering a fraud. Because Wilson failed to provide any evidence of fraudulent intent, we conclude that the crime-fraud exception does not apply, and that Spalding's invention record is protected by the attorney-client privilege. Accordingly, we hereby grant Spalding's mandamus petition in order to prevent the wrongful disclosure of its invention record. *See UC Regents,* 101 F.3d at 1387, 40 USPQ2d at 1785; *see also, Pfizer,* 456 F.2d at 550 (explaining that when there is an insufficient basis for a *prima facie* showing of crime or fraud, mandamus may issue to correct the district court's vitiation of a privilege).

We have considered Wilson's other arguments but find them unpersuasive. For the above reasons, we conclude that Spalding's invention record is protected by the attorney-client privilege.

Accordingly,

IT IS ORDERED THAT:

Spalding's petition for a writ of mandamus is granted. The district court is instructed to vacate the magistrate judge's order to produce the invention record.