**TRANSONIC SYSTEMS, INC., Plaintiff,**

v.

**NON–INVASIVE MEDICAL TECH.,**
**et al., Defendants.**

No. 99–NC–41 B.

United States District Court,
D. Utah,
Central Division.

May 25, 2000.

James F. Lesniak, Karen Vogel Weil, Michael K. Friedland, Knobbe, Martens, Olson & Bear, LLP, Newport Beach, CA, Brian B. Shaw, Harter, Secrest & Emery, LLP, Rochester, NY, Andrew H. Stone, Ryan M. Harris, Jones, Waldo, Holbrook & McDonough, Salt Lake City, UT, for plaintiff.

John F. Bates, Salt Lake City, UT, Terry E. Welch, Parr Waddoups Brown Gee & Loveless, Salt Lake City, UT, Michelle G. Galloway, Ricardo Rodriguez, Jonathan H. Takei, Jennifer L. Wong, Cooley Godward, LLP, Palo Alto, CA, for defendants.

## MEMORANDUM AND ORDER

BOYCE, United States Magistrate Judge.

Plaintiff, Transonic Systems, Inc., has made a motion for return of a document it claims was inadvertently produced to defendant during a document production phase in this case.

Plaintiff, Transonic Systems, Inc., filed the instant action against defendant Non-Invasive Medical Technologies Corporation (NMT) alleging infringement of plaintiff's patent. A protective order was entered by the court on motion of the parties to facilitate, in part, the needed discovery in this case. The protective order in its relevant part provides:

> Should any document which arguably contains a work product or communications subject to the attorney-client privilege be *inadvertently* produced, such production shall not constitute a waiver of the parties' respective attorney-client privileges. (Emphasis Added).

■ Because the protective order creates a special court ordered remedy for inadvertent production of a document, the order, rather than traditional factors that would be assessed in determining whether such a document should be returned, must apply. See Paul R. Rice, *Attorney–Client Privilege In The United States,* 2d Ed. § 9.70 (1999); *Carter v. Gibbs,* 909 F.2d 1450, 1451 (Fed. Cir.1990) (inadvertent disclosure protection not recognized in work product context, attorney-client privilege not otherwise applicable). But, see *Genentech Inc. v. U.S. Intern. Trade Com'n,* 122 F.3d 1409 (Fed.Cir.1997) (waiver by inadvertence is assumed by inadequate protection measures. Effect of protective order discussed).[1] Therefore, the terms of the protective order govern inadvertent document disclosure in this case. See *Western Fuels Ass'n v. Burlington Northern R.R. Co.,* 102 F.R.D. 201, 204 (D.Wyo.1984).

The document production at issue, in this case, arose out of discovery disclosure and involved document production by plaintiff. At the time, plaintiff was represented by different counsel than counsel who appeared on this motion. Transonic's' patent history file was commenced on August 29, 1996. This suit was begun in 1999. In June, 1999 defendant made a request for broad document production. A conscious effort was made by Transonic to produce relevant documents and on July 29–30, 1999 4,965 pages of documents were produced by Transonic to defendant. The disputed document production involved in the matter before the court was not involved in this first document production.

■ Subsequently, on September 22, 1999, Transonic produced an additional 451 pages of documents which included a document with Transonic's in-house patent counsel's comments about the patent examiner's communication concerning the patent at issue in this case.[2] There are legal assessments and comments made about a device for which the patent was being sought. One feature of the device involves "blood mixing."[3] The docu-

---

1. The law of the Federal Circuit appears uncertain as to whether a document inadvertently produced may be recovered on a showing of factors equitably favorable for return, or whether an inadvertent disclosure waives any attorney-client privilege and precludes return of the document. Professor Rice, *infra,* interprets *Carter* as supporting a complete waiver based on inadvertent disclosure. This court is not required to determine the matter because of the specific provisions of the protective order.

2. In this case, the attorney-client privilege, if otherwise applicable, is proper under *Upjohn Company v. United States,* 449 U.S. 383, 101 S.Ct. 677, 66 L.Ed.2d 584 (1981).

3. The technical aspects of the device need not be disclosed. It is sufficient to note that the patent

ment which was produced characterizes the term "blood mixing." This has been asserted by defendant as a matter of critical importance in this case. Chief Judge Benson has conducted a *Markman* hearing[4] in the case and interpreted the patent. The *Markman* interpretation addresses the term "complete mixing" of the blood attendant to the use of the device contained in the patent description, and concluded the wording was not a significant feature and was mistakenly utilized. For the purposes of this ruling the magistrate judge must accept that interpretation and in addition, believes the conclusion is further reinforced by the material submitted as part of this motion. The term "complete mixing" is a careless description of the relevant blood mixing feature of the device.[5] Because of this language, the document has adversarial value to defendant, although probably it is not as significant in law as defendant might contend.

The document was prepared by plaintiff's house attorney Nikolai M. Krivitski, on July 14, 1996 and was clearly labeled "Highly Confidential Attorneys' Eyes Only." Plaintiff contends the document is subject to the attorney-client privilege. On December 14, 1999 Transonic claimed such a privilege for the document and reasserted the privilege claim with a different aspect on January 11, 2000. On February 4, 2000 Transonic made a motion to compel NMT to return the document pursuant to the protective order referenced above. On May 8, 2000 Transonic withdrew part of its motion as to pages of the document that had been presented to the Patent Office.

Declarations have been submitted on both sides of the motion. Defendant NMT opposed the return of the document pursuant to the protective order (File Entry # 56). NMT asserted the subject matter of the communication was not privileged, it was not privileged because the content of the commu-

nication was intended to be disclosed to the patent examiner and was in fact disclosed. It is also contended the attorney-client privilege was inapplicable because of the crime fraud exception, and finally that the production of the document was not inadvertent. Plaintiff submitted a declaration of Kenneth A. Payment, counsel for plaintiff. It was submitted with plaintiff's reply memorandum and addressed the circumstances of the production of the document. The declaration is short and merely asserts the efforts to make discovery and concludes the production was inadvertent. The declaration has been made by attorney George M. Cooper, denying any prior production of the disputed portion of the Krivitski document to the patent office (PTO).

The court finds that the remaining portion of the Krivitski document, which is at issue in this motion, was not disclosed to the PTO or prepared in anticipation of disclosure of the communication. The circumstances are different than those in *American Standard Inc. v. Pfizer*, 828 F.2d 734 (Fed.Cir.1987) (attorney-client privilege not applied). In *American Standard*, the Federal Circuit addressed the attorney-client privilege at length in the context of an opinion letter from outside counsel. The court said:

> The courts have not been clear and of one mind in applying the privilege to communications from attorney to client, such as the legal opinion at issue here. Though the Seventh Circuit has not specifically discussed such communications, it has expressed "general principles" which one district court in that circuit has interpreted as requiring application of the privilege to lawyer-to-client communications that reveal, directly or indirectly, the substance of a confidential communication by the client. *Ohio–Sealy Mattress Mfg. Co. v. Kaplan*, 90 F.R.D. 21, 28 (N.D.Ill.1980). We agree with that interpretation, and, because

is for a medical device (utility patent) that makes important measurements of blood flow in an intravenous shunt during dialysis, using indicator dilution methods.

**4.** *Markman v. Westview Instruments, Inc.*, 517 U.S. 370, 116 S.Ct. 1384, 134 L.Ed.2d 577 (1996).

**5.** This aspect of the language is claimed to be relevant to whether a fraud has been committed on the patent office and whether Transonic made a deliberate waiver of any attorney-client privilege.

there is no such revelation in the opinion letter at hand, we cannot view as clearly erroneous the district court's finding that it was not privileged. Biomet correctly argued before the district court, as it does here, that the opinion letter was not privileged because it did not reveal, directly or indirectly, the substance of any confidential communication. The letter itself supports that assertion. The "opinion letter" is not signed, is not addressed to Biomet or anyone else, and bears no letterhead or other indication of source. It discusses no prior action of Biomet and recommends no action to be taken by Biomet, but merely concludes that the '123 patent is invalid. Because the record is devoid of any indication that the validity opinion reveals the substance of a confidential communication by Biomet, we cannot view as clearly erroneous the district court's finding that the opinion was not privileged. American Standard says that, under the district court's analysis, "advice from counsel containing a legal conclusion about patent validity under the Federal laws could never be privileged even though the advice was prepared specifically for a client." In the context of the facts of this case, we do not agree that the district court's analysis was based on the view that patent validity opinions are subject to treatment different from that given counsel's opinions dealing with other areas of law, or that an opinion could never be a confidential communication when it is based on publicly available information. If that were the district court's view, we would not agree. As noted above, however, this court reviews judgments, not language in opinions. *Black v. Cutter Laboratories*, 351 U.S. 292, 297, 76 S.Ct. 824, 827, 100 L.Ed. 1188 (1956); *Stratoflex*, 713 F.2d at 1540, 218 U.S.P.Q. at 880. No party in this case has argued, nor did the district court say, that a patent-validity opinion is not a legal opinion, or that the practice of patent law is not the practice of law, or that work-product immunity does or does not apply to any of the discovery American Standard seeks. The view that in-house and outside patent counsels' patent-validity opinions are never protected by the attorney-client privilege,

expressed in *United States v. United Shoe Mach. Corp.*, 89 F.Supp. 357 (D.Mass.1950) and *American Cyanamid Co. v. Hercules Powder Co.*, 211 F.Supp. 85, 135 U.S.P.Q. 235 (D.Del.1962), was dealt a fatal blow by the Supreme Court in *Sperry v. Florida*, 373 U.S. 379, 83 S.Ct. 1322, 10 L.Ed.2d 428 (1963), and was administered the coup de grace by our predecessor, the Court of Claims, in *Ledex, Inc. v. United States*, 172 U.S.P.Q. 538, 539 (Ct.Cl.1972). The current weight of authority, see *In re Ampicillin Antitrust Litigation*, 81 F.R.D. 377, 390, 202 U.S.P.Q. 134, 143 (D.D.C.1978); *Nestle Co. v. A. Cherney & Sons, Inc.*, 207 U.S.P.Q. 930, 933 (D.Md.1980), to which we would add our own, recognizes that counsel's opinions on patent validity are not denied the client's privilege protection merely because validity must be evaluated against publicly available information.

Moreover, it is not necessary to read the district court's opinion and its citation in the "sky-is-falling" manner employed by American Standard. The district court said the opinion letter was not a privileged communication because it relied on nonconfidential information and stated the source of that information. Contrary to American Standard's assertion, it did not say the opinion letter was not privileged merely because it relied on publicly available information. It clearly said the letter relied on nonconfidential information gleaned from public records. American Standard simply ignores the finding of nonconfidentiality and focuses alone on its source. Indeed, a mere reading of the above-described opinion "letter" demonstrates its nonconfidential nature. We do not here hold that no patent-validity opinions are ever protected by the attorney-client privilege. Nor do we hold that patent-validity opinions based on publicly available information (as most such opinions are) are for that reason alone outside the attorney-client privilege. Nor do we hold that what the attorney told the client in an opinion letter is always irrelevant. We merely hold that, under the facts of this case, the district court did not err in determining that the opinion letter here at issue did not reveal confidential communi-

cations and therefore was not privileged, and that there was, accordingly, no need to consider whether any waiver might have encompassed the particular testimony and documents sought by American Standard and claimed by Biomet as privileged.

828 F.2d at 745–746.

In this case, there was no voluntary disclosure of the document to third persons, other than by the discovery process (PTO or others). The information in the Krivitski opinion was evaluative and not mere public information. The specific holding in *American Standard*, is not applicable to this case.

Most recently in *In re Spalding Sports Worldwide, Inc.*, 203 F.3d 800 (Fed.Cir.2000) the court further addressed the attorney-client privilege. First, the court ruled on the choice of law applicable to the privilege. It said the law of the Federal Circuit "applies to the issue whether the attorney-client privilege applies to an invention record prepared and submitted to house counsel relating to a litigated patent." If a substantive patent issue is involved in the communication, Federal Circuit law applies, on non-patent issues the regional circuit law where the District Court sits is to be applied. In this case, the communication at issue appears to be controlled by Federal Circuit law. That also includes whether relevant materials are discoverable. *Truswal Sys. Corp. v. Hydro–Air Eng., Inc.*, 813 F.2d 1207, 1212 (Fed.Cir. 1987).

 Since the issue of the attorney-client privilege and the application of the protective order to the allegedly inadvertent disclosure of a document must be governed by Federal Circuit law, the recent decision in *Spalding* is informative:

The privilege "exists to protect not only the giving of professional advice to those who can act on it, but also the giving of information to the lawyer to enable him to give sound and informed advice." *Id.* at 390, 101 S.Ct. 677; see also *Shearing v. Iolab Corp.*, 975 F.2d 1541, 1546, 24 U.S.P.Q.2d 1133, 1138 (Fed.Cir.1992) ("[T]he privilege protects a client's confidential communications to an attorney necessary to obtain legal counseling.") (citing

*Fisher v. United States*, 425 U.S. 391, 403, 96 S.Ct. 1569, 48 L.Ed.2d 39 (1976)). Accordingly, the central inquiry is whether the communication is one that was made by a client to an attorney for the purpose of obtaining legal advice or services. See *Genentech, Inc. v. United States Int'l Trade Comm'n*, 122 F.3d 1409, 1415, 43 U.S.P.Q.2d 1722, 1727 (Fed.Cir.1997) (citing *American Standard Inc. v. Pfizer Inc.*, 828 F.2d 734, 745, 3 USPQ2d 1817, 1824 (Fed.Cir.1987)).

In determining whether the attorney-client privilege applies, we first note that Spalding's invention record constitutes a communication to an attorney. As confirmed by the district court's own review, the invention record was submitted by the inventors of the '178 patent to Spalding's corporate legal department. See Spalding, slip op. at 3. Furthermore, the communication was made for the purpose of obtaining legal advice. According to the declaration of Spalding's current house patent counsel, "[i]t was, and is, the policy at Spalding for Spalding's patent counsel, and/or outside patent counsel to whom the invention is delegated for evaluation, to refer to the INVENTION RECORD for the purpose of making patentability determinations." Covello Decl. ¶ 7. We therefore hold that an invention record constitutes a privileged communication, as long as it is provided to an attorney "for the purpose of securing primarily legal opinion, or legal services, or assistance in a legal proceeding." *Knogo Corp. v. United States*, 213 U.S.P.Q. 936, 940, 1980 WL 39083 (Ct.Cl. Trial Div.1980) (rejecting the characterization of patent attorneys as mere "conduits" to the PTO); see also *Sperry v. Florida*, 373 U.S. 379, 383, 83 S.Ct. 1322, 10 L.Ed.2d 428 (1963) ("[T]he preparation and prosecution of patent applications for others constitutes the practice of law."). Spalding's invention record meets that test.

203 F.3d at 805–806.

Based on this court's observations as to the attorney-client privilege, it is concluded it applies to the document at issue. Further, this court is satisfied that the production of the document by plaintiff has not waived the

attorney-client privilege based on any calculated decision of Transonic's counsel not to seek return of the document. It appears when new incurring counsel came into the case, counsel became aware of the type of nature of the document and immediately sought its return. The protective order in the case does not specify a time or any standard within which a party must request return of a released document.

A timely request for the return of an inadvertently released document is to be implied in the protective order. CF. *Baxter Travenol Laboratories, Inc. v. Abbott Laboratories*, 117 F.R.D. 119, 121 (N.D.Ill.1987). In the context of inadvertent disclosures, courts have required parties seeking the return of a document to act timely. Rice, *supra*, § 9.73. In this case, although the delay in requesting return of the document was significant, approximately three months, the court is not inclined to apply a timeliness bar to request the document return because that question has not been adequately developed by the parties on the record.

In response to Transonic's motion, NMT asserted that any attorney-client privilege was barred by the crime fraud exception to the privilege. Plaintiff has complained that defendant NMT submitted the document to the court without the court directing it to do so and Transonic thereby violated the procedure approved in *United States v. Zolin*, 491 U.S. 554, 109 S.Ct. 2619, 105 L.Ed.2d 469 (1989). Although the disclosure to the court may have been premature, it was harmless. In fact the disclosure probably would have been requested by the court under the *Zolin* procedure. However, the disclosure worked to the plaintiff's advantage by clearly establishing the document's privileged nature, and in light of the Chief Judge's observations at the *Markman* hearing, it actually did defuse the claim for application of the crime fraud exception.

■ In *Spalding*, supra, the court held, "To invoke the crime-fraud exception, a party challenging the attorney-client privilege must make a *prima facie* showing that the communication was made in furtherance of a crime of fraud." *Id.* at 807. The court then observed:

Because severe penalties are usually meted out to the party found guilty of such conduct, [common law] fraud is generally held not to exist unless the following indispensable elements are found to be present: (1) a representation of a material fact, (2) the falsity of that representation, (3) the intent to deceive or, at least, a state of mind so reckless as to the consequences that it is held to be the equivalent of intent (scienter), (4) a justifiable reliance upon the misrepresentation by the party deceived which induces him to act thereon, and (5) injury to the party deceived as a result of his reliance on the misrepresentation.

The court in *Spalding* found the exception inapplicable under circumstances which were more compelling than those in this case. It is concluded the crime-fraud exception in this case does not apply based on the record before the court. There is no *prima facie* case of any attempt at the time of the communication to defraud the PTO.

■ The final contention advanced by NMT is that the production of the document during discovery was not "inadvertent." The facts of this case require a conclusion that when the subject document was produced, its content was known and it was produced with Transonic's counsel being aware of what it was and to what it related to. The document was clearly marked as to subject matter. A cursory examination would have shown that it was part of the patent history record of Transonic's device. It was marked for "attorneys' eyes only." At hearing on the motion, counsel for Transonic, who was not counsel at the time the document was produced, stated that when she observed the document, she immediately became aware of its significance and its privileged nature and took steps to seek its return. However, this justifies the conclusion that production was not "inadvertent" but was "advertent" and what was not appreciated at the time of production was the legal significance of the document. This was not a document inadvertently included in vast materials. The document was Bates stamped and voluntarily produced. The production was not an unintentional act. Poorly judged disclosure is not

inadvertent. *Vakharia v. Swedish Covenant Hosp.*, 1993 WL 313523 (N.D.Ill.1993). See *Rice, supra*, § 9.70, 71. Therefore, this court concludes that disclosure of the document in question was not inadvertent, but mistaken, if at all, only as to whether it was privileged, and that therefore Transonic is not entitled to return of the document under the language of the protection order.

**IT IS SO ORDERED.**