NOTE:  Pursuant to Fed. Cir. R. 47.6, this disposition is not
citable as precedent.  It is a public record.

# United States Court of Appeals for the Federal Circuit

04-3093

SANDRA L. NEAL,

Petitioner,

v.

DEPARTMENT OF JUSTICE,

Respondent.

_____

DECIDED:  December 30, 2004
_____

Before LOURIE, Circuit Judge, FRIEDMAN, Senior Circuit Judge, and BRYSON, Circuit Judge.

PER CURIAM.

The petitioner, Sandra L. Neal, seeks review of the final decision of the Merit Systems Protection Board ("Board") affirming the decision of the Drug Enforcement Agency ("DEA" or "agency") removing her from her position as an intelligence analyst after she repeatedly provided sensitive agency information to an outside attorney.  Neal v. Dep't of Justice, No. AT-0752-00-0761-I-2 (M.S.P.B. Sept. 29, 2003) ("Final Order") (finalizing initial Board decision of Feb. 21, 2002).  We affirm.

I

The underlying facts, largely as found in the initial decision of the Board's administrative judge, are not disputed.

For several years Neal worked for the DEA as an intelligence analyst. Her work involved "accumulat[ing], process[ing], and analyz[ing] sensitive information concerning the trafficking of illegal narcotics." Neal v. Dep't of Justice, No. AT-0752-00-0761-I-2, at 3 (M.S.P.B. Feb. 21, 2002) ("Initial Decision"). Neal received information from various sources, including confidential informants, one of whom, Carlos Acuna, she married. Thereafter, Acuna, represented by attorney Abraham, filed suit in the United States Court of Federal Claims alleging that the DEA had breached a contract to pay him for providing confidential information. Neal was not a party to Acuna's litigation. Id.

In 1996, Abraham began attaching unredacted, sensitive DEA documents, which were not obtained through discovery, to pleadings that he filed with the Court of Federal Claims. Id. at 3-4. The DEA initiated a formal investigation into how Abraham obtained these documents. In that investigation, Brian Anthony-Jung, an employee of Abraham, stated that Neal had supplied the documents and that Neal and Abraham were "conspiring to create a nation-wide network of legal clients of former and current DEA [confidential informants] in order to sue the agency for alleged breach of contract, using the same legal theory Mr. Abraham was using in the Acuna case." Id.

Evidence was developed that Neal misused her DEA mailing privileges to mail Abraham sensitive documents, id. at 10, and that she gave Abraham the names of confidential informants in return for $700 per name, so that Abraham could approach them as prospective clients. Id. at 8. A search of Neal's work area revealed that she

had various DEA sensitive documents corresponding to filings Abraham had made in another confidential informant's Court of Federal Claims action. <u>Id.</u> at 5. In an interview, Neal denied sending Abraham any sensitive documents. At the conclusion of her interview, Neal was given written instructions not to discuss the content of the interview with anyone else, but she discussed the interview with Jung. <u>Id.</u> at 11.

In 2000, DEA instituted proceedings to remove Neal. The notice of proposed removal gave Neal 30 days to respond orally or in writing, and advised her to review the agency case file at the DEA's Miami Field Division (the geographical area in which she worked). Because Neal's representative was located in Massachusetts, the agency also sent a copy of the case file to the Boston Field Division and notified Neal and her representative that it had been sent. <u>Id.</u> at 14. Neal's representative never reviewed or attempted to review the file that had been sent to Boston.

Neal requested a 180-day extension for filing her response because of medical problems. <u>Id.</u> at 13; Decl. of Joel K. Fries, Dec. 27, 2001, at ¶ 11 ("<u>Fries Decl.</u>"). Neal's representative also wrote seeking an "open-ended" delay because Neal was "mentally unable to answer the charges against her." <u>Initial Decision</u> at 14. Although Neal provided some medical documentation relating to her "mental state," she did not explain "why or how a 180-day delay would improve her condition" sufficiently to allow her to respond. <u>Fries Decl.</u> at ¶12-13. The agency's deciding official "noted that [Neal] had been seeing one of the doctors since 1999, yet she was able to come to work and other wise [sic] function as an Intelligence Analyst during this time frame. Additionally, her first written request for delay was articulate and well written." <u>Id.</u> at ¶ 13. Although the agency denied the 180-day extension, it gave Neal several shorter extensions, which

together gave her more than three and one-half months to respond.  <u>Initial Decision</u> at 13-15.  Despite these extensions, Neal never replied to the charges.  <u>Id.</u> at 15.

The DEA removed Neal based upon the foregoing and other misconduct, reflected in five specific charges.  Neal appealed the removal to the Board, making numerous contentions.  She also sought various extensions of time, some of which the Board granted and some of which it denied.  One of her requests for an extension was based on her claim that she received 5,000 pages of new discovery material on the day before her brief originally was due.  The Board rejected this argument, finding that a copy of that discovery material had been served on Neal's representative two months previously.  It further noted: "While the appellant may not have had all of the documents she sought until November 2001, she has had more than a year to prepare her own response to the charges and her affirmative defenses.  Board appeals are typically adjudicated in 120 days." <u>Neal v. Dep't of Justice</u>, No. AT-0752-00-0761-I-2, at 2-3 (M.S.P.B. Jan. 23, 2002) (denying additional extension of time for filing final brief).

After a hearing, the Board's administrative judge in his initial decision, which became final when the Board refused to review it, <u>Final Order</u> at 1-2, found that the DEA had proved its charges, that Neal's removal promoted the efficiency of the service, and that Neal had failed to meet her burden of proving any of her affirmative defenses. <u>Initial Decision</u> at 2-20.  In so holding, the Board found that Jung's testimony that Neal had provided agency confidential materials to Abraham was more credible than Neal's denial that she had done so.  <u>Id.</u> at 5-6.

II

Although Neal's arguments on her appeal are voluminous and not always crystal clear, they basically come down to two contentions: (A) the materials and information she furnished to Abraham were protected against disclosure by the attorney-client privilege, and DEA and the Board therefore erroneously relied upon them; and (B) both the DEA and the Board committed harmful procedural error by refusing to extend filing deadlines to accommodate her medical condition and by failing to provide her with documentation she needed to refute the charges against her.

A. Although the parties apparently dispute whether Abraham (who represented Neal's husband in his breach of contract suit in the Court of Federal Claims) also represented Neal, we need not decide that question. Even assuming that Neal and Abraham had an attorney-client relationship, that would not protect from disclosure the material and information Neal provided to him.

The attorney-client privilege "protects the confidentiality of communications between attorney and client made for the purpose of obtaining legal advice." Genentech, Inc. v. United States Int'l Trade Comm'n, 122 F.3d 1409, 1415 (Fed. Cir. 1997); see also Shearing v. Iolab Corp., 975 F.2d 1541, 1546-47 (Fed. Cir. 1992). In determining whether the privilege applies, "the central inquiry is whether the communication is one that was made by a client to an attorney for the purpose of obtaining legal advice or services." In re Spalding Sports Worldwide, Inc., 203 F.3d 800, 805 (Fed. Cir. 2000).

There is nothing to indicate, or even suggest, that when Neal turned over to Abraham and Jung sensitive information that she had obtained as an intelligence

analyst, she was doing so "for the purpose of obtaining legal service or advice." Nor could it possibly be contended that that was the purpose for supplying Abraham with the names of other DEA confidential informants, in return for the payment of $700 per name. Indeed, the record indicates that Abraham sought this information, not to aid him in providing legal services to Neal, but rather as a source for soliciting other potential clients with claims similar to Acuna's.

B. Neal's arguments regarding her inability to respond to the charges and file a final brief are equally flawed. The record shows that the DEA attempted to accommodate Neal's medical problems by granting several extensions of time — more than tripling the time normally allowed for a response to charges — and also by sending a copy of the agency case file to the Boston office near Neal's representative. Neal, however, failed to respond orally or in writing to the charges. She has not shown how the agency procedure of requiring her or her representative to review the case file at an agency office substantially impaired her rights. See Novotny v. Dep't of Transp., 735 F.2d 521, 523 (Fed. Cir. 1984) (holding that requirement that documents be reviewed at agency office, although an "inconvenience," was not harmful error).

Similarly, the Board provided to Neal's representative two months before the deadline for filing her brief all the documents she had sought through discovery. It also gave Neal additional time for such filing. Once again, however, Neal filed nothing, although she had more than a year within which to do so.

CONCLUSION

The decision of the Board is

AFFIRMED.

04-3093                                        6