AUTOMED TECHNOLOGIES,
INC., Plaintiff,

v.

KNAPP LOGISTICS & AUTOMATION,
INC., et al., Defendants.

No. 104CV1152WSD.

United States District Court,
N.D. Georgia,
Atlanta Division.

Aug. 1, 2005.

John C. Herman, Duane Morris, Atlanta, GA, for Plaintiff and Defendants.

Ryan K. Walsh, Duane Morris, Atlanta, GA, for Plaintiff.

Geoffrey Kirkland Gavin, John S. Pratt, Michael Allen Bertelson, Steven D. Moore, Kilpatrick Stockton, Russell Adam Korn, Sutherland Asbill & Brennan, Atlanta, GA, for Defendants.

### ORDER

DUFFEY, District Judge.

This matter is before the Court on Plaintiff Automed Technologies, Inc.'s Motion to Compel Return of Inadvertently Produced Privileged Document and for an Order Precluding Use of or Reference to the Document or Information Therein [96], Defendants' Brief in Opposition to Plaintiff's Motion to Compel Return of Inadvertently Produced Privileged Document [100], Plaintiff Automed Technologies, Inc.'s Supplementation of the Factual Record in Further Support of Motion to Compel Return of Inadvertently Produced Privilege Document [110] and Defendants' Supplemental Brief in Opposition to Plaintiff's Motion to Compel Return of Inadvertently Produced Privileged Document [111].[1]

---

1. Under the terms of the Protective Order entered in this case, a document designated as entitled to protection under the Order shall lose its protected status when used to support a pleading, unless the party seeking to continue the protected status of the document submits a request for continued protection to the Court in advance of the filing of the pleading.

## BACKGROUND

This is a patent infringement action in which a dispute has arisen regarding whether the attorney-client privilege applies to a document produced in discovery. The document at issue is an Invention Record and Assignment Form (the "Form"). The Form was produced pursuant to a subpoena served on Mr. Robert Barrett, outside counsel for Baxter International, Inc. ("Baxter"). Baxter was the holder of U.S. Patent No. 5,208,762 (the "'762 Patent") which is the predecessor patent to U.S. Reissue Patent No. RE37,-829 (the "'829 Patent"), the patent at issue in this case. In 1998, Baxter sold certain assets to Plaintiff Automed Technologies, Inc. ("Automed"), including the '762 Patent and the application which resulted issuance of the '829 Patent.

Mr. Barrett worked on prosecution of the '762 Patent for Baxter and in view of his involvement in the prosecution, Defendant Knapp Logistics and Automation GmbH ("Knapp US") served a subpoena on Mr. Barrett to require the production of documents relating to the patent. Mr. Barrett produced several hundred pages of documents to counsel for Automed to review for privileged material before the documents were produced. The review was conducted and documents were produced, including the Form. As with other documents produced in the case, the documents from Mr. Barrett's files, including the Form, were produced pursuant to a confidentiality order entered in the case. The order allows documents to be designated as confidential according to two different categories, each of which provides a different level of protection. Automed's counsel designated the Form as "Highly Confidential," the more restrictive confidentiality category. Counsel for Knapp U.S. wrote to Automed's lawyers questioning the completeness of the form and challenging its confidentiality designation. Automed's counsel represented that he had reviewed the Form, that all documents in Mr. Barrett's possession had been produced, and that the Form's confidentiality designation was appropriate.

The Form was thereafter used in three depositions, including the depositions of the co-inventor of the invention covered by the '829 Patent and Automed's patent prosecution counsel. Apparently neither of them indicated they were instructed to maintain the information in the Form as confidential. The Form also was used during the deposition of Mr. Barrett. Mr. Barrett did not recognize the Form specifically. He stated he "believe[d]" the Form was an "internal document, and as such probably would be an attorney-client privileged communication." (Barrett Dep. at 111.) He did not know how the document was used by Baxter's counsel or how the information in it was requested or for what purpose.

Several weeks later, on the basis of Mr. Barrett's testimony, Automed declared that the Form was protected by the attorney-client privilege, stated it had been produced inadvertently and moved for the document to be returned.[2] On July 1, 2005, the Court met with counsel for the

(December 16, 2004 Order [34] at 1–2.) Defendants request continued protection for certain documents filed in connection with their Supplemental Brief in Opposition to Plaintiff's Motion to Compel Return of Inadvertently Produced Privileged Document [112]. The Court has reviewed the documents *in camera* and determines they are sufficiently sensitive to warrant shielding them from public view.

Accordingly, these documents will be deemed to be filed under seal.

2. The confidentiality order in this case provides for the return of inadvertently produced documents protected by an applicable legal privilege. The parties disagree that this provision applies to the Form.

parties and discussed Automed's motion for return of the document. The Court found it did not have sufficient information to determine if the Form was privileged and, accordingly, ordered that Automed be provided additional time to develop the facts surrounding the creation of the Form so that the Court could determine if the Form was protected by the attorney-client privilege. Accordingly, the Court gave the parties up through and including July 7, 2005, to submit additional evidence on this issue.

On July 7, 2005, Automed provided the Court with additional information about the Form and its use. The testimony of two individuals was provided: Kelly D. Eckel, outside litigation counsel for Automed in this action, and Keith Goodale, one of the co-inventors of the invention covered by the '829 Patent. Ms. Eckel's testimony recites some procedural history of the Form's production and provides some additional information concerning the Form's use. Her testimony relies principally on information apparently reported to her regarding (i) Mr. Barrett, (ii) his understanding regarding the history, including ownership, of the '762 and '829 Patents, (iii) Automed's counsel's determination based on its review of the Form that it was not privileged and thus was produced to Knapp US, and (iv) the assertion of the attorney-client privilege following Mr. Barrett's deposition. Ms. Eckel stated that, following the Court's July 1, 2005 hearing, "Duane Morris undertook numerous steps in an attempt to discover more facts concerning [the Form], including contacting the Baxter legal department, but was unable to obtain any addi-

tional information regarding [the Form] from Baxter." (Eckel Aff. ¶ 14.) [3]

Automed also provided a transcript of Mr. Goodale's deposition testimony. Mr. Goodale, a co-inventor of the invention covered by the '762 Patent, was deposed on July 15, 2005,[4] and stated that: (1) he did not know who asked him to prepare the Form (Goodale Dep. at 9); (2) he did not know to whom he forwarded the Form (id. at 11); (3) he did not know who saw the form in addition to the other inventors who signed it (id.); (4) he did not know how the Form was used after he prepared it (id. at 12); (5) he was not told to keep the Form confidential or that he could not disclose it to anyone outside of Baxter (id. at 18); (6) his general understanding of the Form was that it was used "to put the idea with that was to be patented on record" the purpose of which was to "receive a patent for the invention," "[t]o begin the process," "[t]o have a record of the idea itself," and "[t]o log the idea with the proper attorneys at Baxter to receive a patent." (id. at 13, 14, 17, 19); and (7) when he signed the Form, he understood he was assigning to Baxter any rights he had in the invention at issue (id. at 17).

## DISCUSSION

■■■ The attorney-client privilege necessarily tends to interfere with the discovery of the truth. Because of this effect, the privilege must be construed with its purpose, which is to encourage clients to communicate freely and opening with their attorneys by removing the fear that their discussions will be subject to disclosure. *United States v. Suarez*, 820 F.2d 1158 (11th Cir.1987); *Shearing v. Iolab Corp.*,

---

3. Paragraphs 15–17 of Ms. Eckel's affidavit are a summary of the deposition testimony of Mr. Keith Goodale. The Court has reviewed independently the transcript of Mr. Goodale's testimony.

4. The understanding of Mr. Goodale's testimony was impeded by counsel's frequent objections asserted to the questions posed to him.

975 F.2d 1541, 1546 (Fed.Cir.1992) ("[T]he privilege protects a client's confidential communications to an attorney necessary to obtain legal counseling."). "The party invoking the attorney-client privilege has the burden of proving that an attorney-client relationship existed and that the particular communications were confidential." *United States v. Schaltenbrand,* 930 F.2d 1554, 1562 (11th Cir.1991) (citing *In re Grand Jury Proceedings in Matter of Freeman,* 708 F.2d 1571, 1575 (11th Cir. 1983)); *Bogle v. McClure,* 332 F.3d 1347, 1358 (11th Cir.2003). "To determine if a particular communication is confidential and protected by the attorney-client privilege, the privilege holder must prove the communication was '(1) intended to remain confidential *and* (2) under the circumstances was *reasonably* expected and understood to be confidential.' " *Id.* (citing *United States v. Bell,* 776 F.2d 965, 971 (11th Cir.1985)). *Cf. Integrity Ins. Co. v. Am. Centennial Ins. Co.,* 885 F.Supp. 69, 74 (S.D.N.Y.1995) (holding communication was not attorney-client privileged because party claiming the privilege failed to show the communication "was anything more than incidental to the attorney-client relationship").

The attorney-client privilege has been addressed by the Federal Circuit in the context of invention records in *In re Spalding Sports Worldwide, Inc.,* 203 F.3d 800 (Fed.Cir.2000). In *Spalding Sports,* the issue was the whether the invention record [5] submitted by the inventors of a basketball to Spalding's patent attorneys was subject to the attorney-client privilege. The *Spalding Sports* court acknowledged that, even in matters involving invention records, the "central inquiry [with respect to the attorney-client privilege] is whether the communication is one that was made by a client to an attorney for the purpose of obtaining legal advice or services." *Id.* at 802. The court noted further that "whether the attorney-client privilege applies should be determined on a case-by-case basis." *Id.* (citing *Upjohn Co. v. United States,* 449 U.S. 383, 386, 101 S.Ct. 677, 66 L.Ed.2d 584 (1981)). The court concluded the invention record at issue in that case was subject to the attorney-client privilege, holding that the evidence demonstrated the record "was prepared and submitted primarily for the purpose of obtaining legal advice on patentability and legal services in preparing a patent application . . . ." [6]

■ Against this backdrop, the Court here considered whether the Form is protected by the attorney-client privilege. The Court finds it is not. The factual record here is very different from the record in the *Spalding Sports* case. The testimony of Mr. Barrett and Mr. Goodale, the only two individuals who specifically addressed the Form, demonstrates that the origin, transmission and use of the Form is unknown. While Mr. Barrett believes it ultimately was transferred to Baxter's legal department and believes it is attorney-client privileged, he does not have personal knowledge of facts necessary to establish the Form is subject to the privi-

**5.** The *Spalding Sports* court defined "invention records" as "standard forms generally used by corporations as a means for inventors to disclose to the corporation's patent attorneys that an invention has been made and to initiate patent action. They are usually short documents containing space for such information as names of inventors, description and scope of invention, closest prior art, first date of conception and disclosure to others, dates of publication, etc." 203 F.3d at 802 n. 2.

**6.** The court stated that "[i]t is enough that the overall tenor of the document indicates that it is a request for legal advice or services. Moreover, it is not necessary to expressly request confidential legal assistance when that request is implied." *Spalding Sports,* 203 F.3d at 806.

**1376**

lege or even that it was used in connection with any counsel's consideration of patentability or in connection with a patent prosecution. Mr. Goodale also was unaware of the use of the Form and stated he was not told to keep the Form or its contents confidential. In fact, a review of his testimony in its entirety indicates the Form was little more than an administrative requirement he was obligated to fulfill. To the extent the Form was significant to him, it was because he knew it was the document by which he assigned to Baxter any interest he had in the invention that was the subject of the Form. Thus, the only purpose of the Form discernable from these witnesses' testimony is its role in assigning the inventors' interests to Baxter.

The Form itself does not indicate that it is used in the patent evaluation or prosecution processes and there is nothing in it to suggest it contained privileged information or was a communication of information, confidential or not, for use by counsel for Baxter. Interestingly, Mr. Baxter did not express an opinion that the information was privileged or that the information in the Form was the kind of information which he used to evaluate or prosecute patents.

In short, Automed has fallen significantly short of its burden to show the application of the attorney-client privilege to the Form and the Court necessarily concludes it is not protected by the attorney-client privilege.

Accordingly,

**IT IS HEREBY ORDERED** that Plaintiff Automed Technologies, Inc.'s Motion to Compel Return of Inadvertently Produced Privileged Document and for an Order Precluding Use of or Reference to the Document or Information Therein [96] is **DENIED**.