**Astra AKTIEBOLAG, et al., Plaintiffs,**

v.

**ANDRX PHARMACEUTICALS, INC., Defendant.**

**In re Omeprazole Patent Litigation.**

Nos. 99 Civ. 8926 (BSJ), 99 Civ. 9887 (BSJ). MDL Docket No. 1291.

United States District Court, S.D. New York.

June 1, 2002.

Errol B. Taylor, Fredrick M. Zullow, Robert L. Baechtold, Charles P. Baker, Gregory B. Sephton, John D. Carlin, Fitzpatrick, Cella, Harper & Scinto, New York City, for Plaintiffs.

Louis M. Solomon, Margaret A. Dale, Colin A. Underwood, Solomon, Zauderer, Ellenhorn, Frischer & Sharp, New York City, James V. Costigan, Martin P. Endres, Hedman & Costigan, P.C., New York City, for Defendant.

### Opinion

JONES, District Judge.

## I. INTRODUCTION

Andrx challenged Astra's assertions of attorney-client privilege and/or work product protection for seventy-five documents for Phase IV of this trial. (*See* Letter from Astra to court of 5/29/02; Letter from Andrx to court of 5/24/02.) Andrx challenged the following documents, which were listed on several different privilege logs: documents 59, 334, 367, 442, 442-1, 521, 526, 527, 530, 531, 531-1, 533, 533-1, 533-2, 535, 535-1, 543, 578, 578-1, 580, 580-1, 587, 588, 616, 616-1, and 623 on the May 15, 2002, Supplemental '281 Privilege Log; documents 116-1, 197-1, 200-2, 211-2, 217, 223, 223-1, 235-1, 237-1, 245-1, 263-1-1, 430-1, 484-1, 585,[1] 827, and 836-1 on the April 24 Kim and Chang Log;[2] documents 235, 246, 1524, 1525, 1544, 1546, 1550, 2133, 2134, 2142, 2421, 2534, 2585, 2587, 2588,[3] and 2605 on the Astra May 2 Categorical Log and May 7 Supplement; documents 712-1, 712-2, 731-1, and 775-2 on the April 30, 2002, Kim and Chang Supplemental Privilege Log; documents 984A, 990, 1627, 2289, 2292,[4] 2412, 2413, and 2414 on the May 2 Supplement to the 1999 Categorical Log; and documents 3059, 3059A, 3059B, 3059C, and 3059D on the May 10 Supplement to the 1999 Categorical Log.[5] (*See id.*)

Because of the complexity of this case, this court decided that an *in camera* inspection of the documents would be necessary to decide properly the issues raised by Andrx's challenges. Astra submitted the challenged documents to the court for review in a series of five *in camera* submissions. The court reviewed each of the documents individually. After conducting a complete *in camera* review of all of the challenged documents, the court ordered the immediate production of twenty-two of the challenged documents either in their entirety or with appropriate redactions. (*See* Order of 5/27/02.) The court also provided Andrx with a redacted copy of an additional document during a conference on May 30, 2002. The court addresses the issues raised by each of Andrx's challenges in detail below.

Astra's first *in camera* submission contained documents 116-1, 197-1, 200-2, 211-2, 217, 223, 223-2, 235-1, 237-1, 245-1, 263-1-1, 430-1, 484-1, 827, and 836-1. All of those documents were maintained in the files of the Korean law firm Kim and Chang and related to Korean proceedings, including those between Astra and CKD. (Ryberg Decl. of 4/29/02, ¶ 2.) There are two general categories of documents at issue in the first *in camera* submission: (1) communications between employees of Astra in Sweden, including Astra's in-house counsel, and Astra's outside counsel in Korea regarding matters pending in the Korean courts and before the Korean Intellectual Property Office ("KIPO") and (2) internal communications among Astra employees in Sweden that were transmitted to Astra's outside counsel in Korea.

Astra's second *in camera* submission contained documents 235, 246, 334, 367, 442, 442-1, 521, 526, 527, 543, 578, 578-1, 580, 580-1, 585, 587, 588, 616, 616-1, 623, 1524, 1525, 1544, 1546, 1550, 2133, 2134, 2142, 2421,

---

1. Document 585 has already been produced to Andrx. That production by Astra eliminates the need for *in camera* review.

2. Documents 217, 223, and 827 were also listed on the April 8, 2002, Kim and Chang Privilege Log.

3. Document 2588 has already been produced to Andrx. That production by Astra eliminates the need for *in camera* review.

4. Document 2292 has already been produced to Andrx with a single handwritten note appropriately redacted. That production by Astra eliminates the need for further *in camera* consideration of the document.

5. Since none of the numbers assigned to the seventy-five challenged documents repeat, the court will refer to the documents by number, without reference to the privilege log on which the document was listed.

2534, 2585, 2587, 2588, and 2605. With the exception of document 585, which was maintained in the files of Kim and Chang, the documents were maintained either by Astra's legal department, Astra's patent department, or the offices of Astra's in-house scientific advisors. Documents 235, 246, 585, 1524, 1525, 1544, 1546, 1550, 2133, 2134, 2142, 2421, 2534, 2585, 2587, 2588, and 2605 are either (1) communications between Astra employees in Sweden and in-house lawyers or Kim and Chang lawyers or (2) communications between Astra employees, including lawyers, Kim and Chang lawyers, and Professor C.T. Rhodes. All of those documents relate to Korean litigation between Astra and CKD. Documents 442, 442–1, 616, and 616–1 are either (1) communications between Astra employees in Sweden and in-house lawyers or (2) communications between Astra employees, including lawyers, and Astra's German counsel Wolfgang Dost. These documents relate to Astra's patents and pending applications. Documents 334, 521, 526, 527, 543, 578, 578–1, 580, 580–1, 587, 588, and 623 are communications between or among Astra employees and in-house counsel or (2) communications between Astra employees, including lawyers, and Astra's U.S. counsel. These documents relate to one of Astra's U.S. patent applications or its PCT and Swedish priority applications. Document 367 relates to a foreign patent application never submitted for review.

Astra's third *in camera* submission contained documents 503, 531, 531–1, 533, 533–1, 533–2, 535, and 535–1. All of those documents were maintained originally in the files of Birgitta Larsson, an Astra employee responsible for prosecuting, or coordinating with Astra's outside counsel in prosecuting, patent applications around the world. (Larsson Decl. of 5/15/02, ¶¶ 1–2.) Each of the documents is a communication between Larsson and either American or Korean outside counsel for Astra.

Astra's fourth *in camera* submission contained documents 59, 712–1, 712–2, 731–1, 775–2, 984A, 990, 2289, 2292, 2412, 2413, 2414, 3059, 3059A, 3059B, 3059C, and 3059D. Those documents were maintained by Astra's legal department, Astra's patent department,

the offices of Astra's in-house scientific advisors or in the files of the Korean law firm Kim and Chang. (Ryberg Decl. of 5/23/02, ¶ 2.)

Astra's fifth *in camera* submission consisted solely of document 1627, (*see* Letter from Astra to court of 5/29/02), which was requested after this court issued its initial order on May 27, 2002, requiring Astra to produce some of the challenged documents.

## II. RELEVANCE

■ As a threshold issue, the court considered the relevance of each of the challenged documents. The determination of whether material is relevant in a patent case is governed by Federal Circuit law when the material relates to an issue of substantive patent law. *See Advanced Cardiovascular Sys., Inc. v. Medtronic, Inc.*, 265 F.3d 1294, 1307 (Fed.Cir.2001); *Midwest Indus., Inc. v. Karavan*, 175 F.3d 1356, 1359 (Fed.Cir.1999) (citing *Truswal Sys. Corp. v. Hydro–Air Eng'g, Inc.*, 813 F.2d 1207, 1212 (Fed.Cir. 1987)). Applying Federal Circuit law, the court finds that it need not address Andrx's challenges to documents 59, 367, 2412, 2413, 2414, 3059, 3059A, 3059B, 3059C, and 3059D because the documents are irrelevant to the issues raised by the claims and defenses asserted in Phase IV of this trial.

·

## III. CHOICE OF LAW

### A. REGIONAL OR FEDERAL CIRCUIT

■ In deciding issues in a patent case, a district court applies the law of the circuit in which it sits with respect to nonpatent issues and the law of the Federal Circuit to issues of substantive patent law. *Institut Pasteur v. Cambridge Biotech Corp.*, 186 F.3d 1356, 1358 (Fed.Cir.1999). An issue "that is not itself a substantive patent law issue is nonetheless governed by Federal Circuit law if the issue pertains to patent law, if it bears an essential relationship to matters committed to [the exclusive control of the Federal Circuit] by statute, or if it clearly implicates the jurisprudential responsibilities of [the Federal Circuit] in a field within its exclusive jurisdiction." *Midwest Indus., Inc. v. Karavan Trailers, Inc.*, 175 F.3d 1356, 1359 (Fed.Cir.1999) (*en banc* in relevant

part) (internal citations and quotation marks omitted); *see GFI, Inc. v. Franklin Corp.*, 265 F.3d 1268, 1272 (Fed.Cir.2001). Under these rules, questions of privilege, confidentiality, and waiver are generally governed by regional circuit law. *GFI*, 265 F.3d at 1272 (waiver by disclosure of privileged material); *In re Pioneer Hi–Bred Int'l Inc.*, 238 F.3d 1370, 1374 (Fed.Cir.2001) (privilege); *In re Jenoptik AG*, 109 F.3d 721, 723 (Fed.Cir. 1997) (confidentiality); *In re Regents of Univ. of Cal.*, 101 F.3d 1386, 1390 n. 2 (Fed. Cir.1996) (privilege); *Dorf & Stanton Comm., Inc. v. Molson Breweries*, 100 F.3d 919, 922–23 (Fed.Cir.1996) (discovery orders and waiver); *see also In re VISX, Inc.*, 18 Fed.Appx. 821, 823 (Fed.Cir.2001) (unpublished) (waiver by partial disclosure); *Amgen, Inc. v. Hoechst Marion Roussel, Inc.*, 232 F.3d 905, 2000 WL 290346, at *2 (Fed. Cir.2000) (Table, Text in WESTLAW) (waiver by inadvertent production).

Despite those general guidelines, the Federal Circuit has held that its "own law applies to the issue whether the attorney-client privilege applies to an invention record prepared and submitted to house counsel relating to a litigated patent." *In re Spalding Sports Worldwide, Inc.*, 203 F.3d 800, 803 (Fed.Cir. 2000). In *Spalding*, the Federal Circuit noted that the applicability of the attorney-client privilege to Spalding's invention record implicated the substantive patent law issue of inequitable conduct. 203 F.3d at 803–04. Unlike the document at issue in *Spalding*, most of the documents at issue in this case

are litigation documents and correspondence, including draft briefs and legal arguments, transmitted between in-house counsel and their agents and outside foreign counsel for purposes of obtaining legal advice about the conduct of litigation overseas. Since the question of whether such documents are covered by the attorney-client privilege or work product protection does not implicate issues unique to patent law, the court applies the law of the Second Circuit when determining the applicability of the attorney-client privilege or work product protection to the bulk of the challenged documents.[6] *See Spalding*, 203 F.3d at 804; *In re Regents of the Univ. of California*, 101 F.3d 1386, 1390 n. 2 (Fed. Cir.1996).

## B. FOREIGN LAW

Most, if not all, of the challenged documents are foreign documents; therefore, determination of the applicability of attorney-client privilege or work product protection to many of the challenged documents implicates issues of foreign law. Rule 501 of the Federal Rules of Evidence provides that questions of privilege in a federal question case are "governed by the principles of common law as they may be interpreted by the courts of the United States in the light of reason and experience." The "common law" applied under Rule 501 includes "choice of law" questions. *Golden Trade S.r.L. v. Lee Apparel Co.*, 143 F.R.D. 514, 519 (S.D.N.Y.1992).

---

**6.** The court respectfully disagrees with the conclusion reached in *Softview Computer Products Corp. v. Haworth, Inc.*, 97 Civ. 8815, 2000 WL 351411, at *2 n. 5 ("[I]t now appears that the scope of the attorney-client privilege in patent cases is governed by Federal Circuit standards and not the standards ordinarily applied by the regional circuit.") (citing *Spalding*, 203 F.3d at 803). The conclusion reached in *Softview* and ascribed to *Spalding* is simply too broad in light of other Federal Circuit precedent concerning attorney-client privilege and related issues.

Ultimately, this court's decision to apply the law of either the Federal Circuit or the Second Circuit when ruling on Andrx's challenges does not affect the substance of the court's decisions. The court finds that the outcome with respect to each document is the same regardless of which law applies. The Federal Circuit recognizes the same principles of comity that this court relies upon in determining the choice-of-law issues in

this case. Moreover, the law of attorney-client privilege and work product protection, as recognized by the Second Circuit and the Federal Circuit, is not substantively different. *See Softview Computer Products Corp. v. Haworth, Inc.*, 97 Civ. 8815, 2000 WL 351411, at *2, n. 5 ("[T]here does not appear to be a material difference between the [Second Circuit] definition and the definition applied by the Federal Circuit.") (citing *Shearing v. Iolab Corp.*, 975 F.2d 1541, 1546 (Fed.Cir.1992); *American Standard, Inc. v. Pfizer, Inc.*, 828 F.2d 734, 745 (Fed.Cir.1987)). As the Federal Circuit stated with respect to the attorney-client privilege in *Spalding*, "the central inquiry is whether the communication is one that was made by a client to an attorney for the purpose of obtaining legal advice or services." 203 F.3d at 805 (citing *Genentech, Inc. v. United States Int'l Trade Comm'n*, 122 F.3d 1409, 1415 (Fed.Cir.1997)).

The Federal Circuit generally defers to the law of the regional circuit on questions of comity. *International Nutrition Co. v. Horphag Research Ltd.,* 257 F.3d 1324, 1328 (Fed.Cir.2001) (affirming extension of comity to French judgment under Second Circuit law). Even when the Federal Circuit applies its own law, it observes principles of international comity. *Cochran Consulting, Inc. v. Uwatec USA, Inc.,* 102 F.3d 1224, 1229 (Fed. Cir.1996) (applying "long established principles of international comity" to application of foreign judgment). Accordingly, the outcome of the choice-of-law analysis concerning these documents is the same regardless of whether Second Circuit or Federal Circuit law is applied.

In *Golden Trade, S.r.L. v. Lee Apparel Co.,* 143 F.R.D. 514, 518–19 (S.D.N.Y.1992), the court adopted the comity or "touching base" approach and applied a traditional choice-of-law "contacts" analysis to determine the law that applies to claims of privilege involving foreign documents:

> In assessing the potential availability of foreign privilege law governing communications with patent agents, most courts have engaged in a form of traditional choice-of-law "contacts" analysis ... and have thus looked to whether the client was domestic or foreign, and whether the foreign patent agent was working on foreign patent matters or assisting in efforts to obtain a United States patent.... The working standard in these cases has been summarized in general terms as follows: "any communications touching base with the United States will be governed by the federal discovery rules while any communications related to matters solely involving [a foreign country] will be governed by the applicable foreign statute." .... [C]ommunications by a foreign client with foreign patent agents "relating to assistance in prosecuting patent applications in the United States" are governed by American privilege law whereas communications "relating to assistance in prosecuting patent applications in their own foreign country" or "rendering legal advice ... on the patent law of their own country" are, as a matter of comity, governed by the privilege "law of the foreign country in which

the patent application is filed," even if the client is a party to an American lawsuit.

143 F.R.D. at 520 (internal citations omitted); *see also VLT Corp. v. Unitrode Corp.,* 194 F.R.D. 8, 15–17 (D.Mass.2000) (adopting and explaining "touching base" analysis); *accord Stryker Corp. v. Intermedics Orthopedics, Inc.,* 145 F.R.D. 298, 305 (E.D.N.Y.1992); *Detection Systems, Inc. v. Pittway Corp.,* 96 F.R.D. 152, 156 (W.D.N.Y.1982); *Bayer AG & Miles, Inc. v. Barr Lab., Inc.,* 92 Civ. 0381, 1994 WL 705331 (S.D.N.Y. Dec.16, 1994).

■ Where, as here, alleged privileged communications took place in a foreign country or involved foreign attorneys or proceedings, this court defers to the law of the country that has the "predominant" or "the most direct and compelling interest" in whether those communications should remain confidential, unless that foreign law is contrary to the public policy of this forum. *Golden Trade,* 143 F.R.D. at 522; *Bayer,* 1994 WL 705331, at *4; *see also In re Ampicillin Antitrust Lit.,* 81 F.R.D. 377, 391 (D.D.C.1978); *McCook Metals L.L.C. v. Alcoa Inc.,* 192 F.R.D. 242, 256 (N.D.Ill.2000). The jurisdiction with the "predominant interest" is either "the place where the allegedly privileged relationship was entered into" or "the place in which that relationship was centered at the time the communication was sent." *Golden Trade,* 143 F.R.D. at 521–22; *see Bayer,* 1994 WL 705331, at *4. Under these standards, it is clear that the challenged documents implicate the law of several different countries.

■ The court's review of documents 442, 442–1, 616, and 616–1 implicates the law of Germany. Documents 442–1 and 616–1 are copies of a letter to Astra's in-house counsel from Astra's outside German counsel providing legal opinions and conveying legal advice. Documents 442 and 616 are copies of a confidential communication in Swedish between Astra's in-house counsel and other Astra employees in Sweden forwarding copies of the opinions and advice rendered by Astra's German counsel for the purpose of obtaining and rendering additional legal advice. The court finds that Germany has the most compelling interest in whether these documents are pro-

tected from disclosure; therefore, this court applies German law during its review of the following documents: 442, 442–1, 616, and 616–1.

■ Many of the challenged documents relate to four proceedings in Korea between Astra U.S.A. and CKD, a Korean entity. Three of those proceedings focused on Korean Patent No. 55426—a patent owned by Astra U.S.A. (Han Decl. of 5/6/02, ¶ 5, Ex. 2.) The first two proceedings, a preliminary injunction action and a damages/infringement action, were conducted in the Korean courts. (Han Decl. of 5/6/02, ¶ 5.) The third proceeding, a confirmation of scope trial, was conducted in the KIPO to determine whether a hypothetical process fell within the coverage of Astra U.S.A.'s Korean Patent No. 55426. (*Id.*) The fourth proceeding, an opposition proceeding in the KIPO, was brought by Astra U.S.A. against CKD's Patent Application No. 95–15059. With respect to these proceedings, Astra's employees and in-house legal counsel communicated with outside Korean counsel, the law firm of Kim and Chang, on behalf of Astra U.S.A. (*Id.*) "When a Korean attorney is representing a foreign client in a Korean proceeding, the Korean attorney will generally anticipate that the Korean law of privilege will apply to the attorney's communications with the client and the work product created for that proceeding." (Shin Decl. of 5/4/02, ¶ 9.) Under applicable principles of comity, this court will apply the law of Korea to Andrx's challenges to the following documents, all of which relate to the four Korean proceedings: 116–1, 197–1, 200–2, 211–2, 217, 223, 223–1, 235, 235–1, 237–1, 245–1, 263–1–1, 430–1, 484–1, 712–1, 712–2, 731–1, 775–2, 827, 836–1, 984A, 990, 1524, 1544, 1546, 1550, 1627, 2133, 2134, 2289, 2421, 2534, 2585, 2587, and 2605.[7]

■ The court finds that the following documents "touch base" with the United States: 334, 521, 526, 527, 530, 531, 531–1, 533, 533–1, 533–2, 535, 535–1, 543, 578, 578–1, 580, 580–1, 587, 588, and 623. All but one of these documents are either communications between Astra employees, including in-house counsel, and Astra's outside American counsel or between Astra's in-house counsel and other Astra employees relating to the prosecution of patent applications or the conduct of litigation in the United States. The remaining document, document 535, is a communication between Astra's in-house counsel and Astra's Korean counsel, but the communication relates to the prosecution of a patent application in the United States and was maintained by Astra in its files relating to the prosecution of that patent. Therefore, United States law applies to the court's review of those documents. *See Odone v. Croda Intern., PLC*, 950 F.Supp. 10, 13 (D.D.C. 1997) (finding that communications involving not only United States patents but also the foreign priority applications of U.S. patents "touch base" with the United States.)

## IV. REVIEWING THE DOCUMENTS [8]

### A. APPLYING GERMAN LAW

■ In support of its claims of attorney-client privilege and work product protection under German law, Astra has supplied the court with the declaration of Dr. Mathias Ricker, a Patent Attorney and partner with a German law firm. Declarant Ricker reports that German law promises confidentiality to communications between a patent attorney or agent and his clients. (Ricker Decl. of 5/16/02, ¶ 3.) German courts may not compel such a patent attorney or agent to disclose or produce those communications, whether written or oral. (*Id.*) This unrebutted showing suffices to establish that the documents in

---

7. As discussed in detail below, even if this court were to find that any of the subject communications have more than an "incidental connection" to the United States or that the United States has the "most direct and compelling interest" in them because Astra U.S.A. was a party to all four Korean proceedings, the outcome of the court's *in camera* review of the documents would remain unchanged.

8. Astra has asserted that both the attorney-client privilege and work product doctrine protect many of the challenged documents from disclosure. If the court has found that the attorney-client privilege applies to a particular document for which attorney work product protection was also asserted, the court has not addressed the work product doctrine with respect to that document.

question would be protected under German law. *See Golden Trade*, 143 F.R.D. at 524; *see also Bayer*, 1994 WL 705331, at *7 n. 6 (discussing and quoting *Golden Trade*); *Softview Computer Products Corp. v. Haworth, Inc.*, 2000 WL 351411, at *11 (S.D.N.Y.2000) ("German law protects communications between a patent agent and his or her clients.") (citing *Golden Trade*); *McCook*, 192 F.R.D. at 257 ("Under German law, attorney-client privilege protects 'all communications between a German patent attorney and his client which occur in the rendition of legal services for the client.' ") (quoting *Santrade, Ltd. v. General Electric Co.*, 150 F.R.D. 539, 547 (E.D.N.C.1993)).

■ Documents 442, 442–1, 616, and 616–1 would also be protected from disclosure by the attorney-client privilege under the law of this Circuit. Accordingly, the court finds that the protection of these four documents under German law "would not seriously impinge on any significant policy of this forum." *Golden Trade*, 143 F.R.D. at 522. Therefore, the court sustains Astra's claims of attorney-client privilege for documents 442, 442–1, 616, and 616–1 under German law.

## B. APPLYING KOREAN LAW

■ In support of its claims of attorney-client privilege and work product protection under Korean law, Astra has supplied the court with numerous declarations by Korean counsel. Korea is a civil law country. (Shin Decl. of 5/4/02, ¶ 10.) Judges in civil law countries do not make new law in the sense that common law courts do; instead, they interpret the statutory codes of their countries. *See Alpex Computer Corp. v. Nintendo Co., Ltd.*, No. 86 Civ. 1749, 1992 WL 51534, at *3 (S.D.N.Y. Mar.10, 1992) (affirming Magistrate Judge's refusal to imply a privilege under Japanese civil code nearly identical to that at issue in this case).[9] Thus, principles of comity limit this court's inquiry under Korean law to a determination of whether there is a Korean statute establishing a privilege on the basis of which Astra is entitled to withhold production of the documents at issue. If no privilege is provided for by the statutes of the foreign forum, no privilege can be implied. *Alpex*, 1992 WL 51534, at *2; *Bayer*, 1994 WL 705331, at *5; *see also Bristol–Myers Squibb Co. v. Rhone–Poulenc Rorer, Inc.*, 95 Civ. 8833, 1998 WL 158958, at *3 (1998), *mot. for recons. denied*, 188 F.R.D. 189 (S.D.N.Y.1999) (noting that evidence of customary practices is "generally not considered adequate authority" as to foreign law).

Korean statutes do provide for a number of protections related to the concept of attorney-client privilege as it is known in this country. For example, Korea has statutory provisions that excuse attorneys from the obligation of revealing their clients' secrets when they are testifying in court. (Shin Decl. of 5/4/02, ¶ 13.)[10] That testimonial im-

---

**9.** The Japanese code provision at issue in Alpex stated:

> A witness may refuse to testify:
> 2. In cases where the witness is questioned as to the knowledge of facts which, he, being or having been, a doctor, dentist, pharmacist, mid-wife, attorney, patent agent, advocate, notary or an occupant of a post connected with religion or worship, has obtained in the exercise of professional duties and which facts should remain secret; or
> 3. in cases where the witness is questioned with respect to matters relating to technical or professional secrets.

*Alpex*, 1992 WL 51534, at *2 (quoting Article 281 of the Japanese Code of Civil Procedure).

**10.** Article 286 of the Korean Code of Civil Procedure provides:

*Article 286 (Right to Refuse to Testify)*
> (1) A witness may refuse to testify in the following cases: <Amended Jan. 13, 1990>
> 1. Where a lawyer, patent attorney, notary public, ... or a person who was in such profession is questioned on secret matters which came to his knowledge in the course of performing his professional duties; and
> 2. Where he is questioned on matters relating to a technical or professional secret.
> (2) The provisions of paragraph (1) shall not apply where the witness has been released from his duty to keep secret. <Amended Jan. 13, 1990>

(Shin Decl. Of 5/4/02, ¶ 13.) *See also* Article 26 of the Attorney-at-law Act (Duty to Maintain Confidentiality) (*quoted in* Shin Decl. of 5/4/02, ¶ 15), which states that "[a]ny attorney-at-law or any former attorney-at-law shall not disclose any confidential matters that he learned in the course of performing his duties: *Provided*, That this shall not apply to the case where such disclosure of confidential matters is especially prescribed otherwise by Acts. Such 'Acts' might include Article 288 and 289 of the Civil Procedure Act, which

munity, however, can only be invoked by professionals, not their clients. (Shin Decl. of 5/4/02, ¶ 14.) The Korean statutes address confidential information *received by the attorney,* not communications from the lawyer to the client. (Shin Decl. of 5/4/02, ¶¶ 6, 12, 14, 16; *see* Han Decl. of 5/2/02, ¶¶ 3–5.) Neither an attorney's communication to a client nor information that the client anticipates the attorney will convey to a court or adverse party is covered within the text of these provisions. (*See* Shin Decl. of 5/4/02, ¶¶ 13–19.) Moreover, Korean law does not recognize a work product doctrine as it is understood in the United States; the court has been advised of no statute, rule, court decision, or doctrine that provides that a party or attorney may refuse to disclose tangible materials on the ground that they were prepared in anticipation of litigation. (Shin Decl. of 5/4/02, ¶ 11.)

Courts in this District have recognized that the "fact that a [foreign] statute requires a party to keep clients' affairs secret does not mean that a privilege exists," and that, even in the United States, there are confidentiality requirements in the law that "do not create a privilege equivalent to the attorney/client privilege." *Bristol–Myers,* 1998 WL 158958, at * 3; *see Bayer,* 1994 WL 705331, at *5 (finding that communications with a professional cannot be deemed privileged under foreign law "simply because" a provision of foreign law grants the professional "the right not to testify about information she obtains in the course of her duties"); *Alpex,* 1992 WL 51534, at *2; *see also Santrade,* 150 F.R.D. at 547 (following *Alpex*).

Despite conclusory statements to the contrary, (*see* Han Decl. of 5/2/02, ¶ 3; Han Decl. of 5/6/02, ¶ 2), Astra has not shown that Korean law entitles Astra, as Kim and Chang's client, to invoke any attorney-client privilege or work product protection with respect to the documents at issue. Therefore, the documents are not shielded from production on that basis.

However, both of these findings-lack of a statutory attorney-client privilege and work product protection in Korea-rest on the assumption that parties may be ordered or required to testify or produce documents concerning confidential communication by a Korean court during a lawsuit. The court finds that such an assumption is, in fact, erroneous. Astra has demonstrated sufficiently for the purposes of this court's present document review that these documents would not be subject to production, whether through a discovery process or by court order, in a Korean civil lawsuit. Under Korean law, a court may only issue an order to compel document production under specific limited circumstances designated by statute.[11] These challenged documents would not be ordered produced under any of the three limited circumstances described by Article 316 of the Korean Code of Civil Procedure. (Han. Decl. of 5/2/02, ¶¶ 6–10; Han Decl. of 5/6/02, ¶¶ 10–11.) That is, none of challenged documents were cited during Astra's Korean legal proceedings, Andrx has no independent legal right to the documents under Korean law, and none of the documents evidences a legal relationship between

require the attorney to testify after court order or to face penalties." (Shin Decl. of 5/4/02, ¶ 16.)

**11.** Article 316 of the Korean Code of Civil Procedure sets out the three specific circumstances when documents must be produced:
*Article 316 (Obligation to Produce Documents)*
The holder of a document shall not refuse to produce it in the following cases:
1) When the party himself possesses the document which he has cited in the lawsuit;
2) When the applicant is entitled to request the holder of the document to deliver it or to make it available for inspection; and
3) When the document has been prepared for the benefit of the applicant, or prepared with regard to a legal relation between the applicant and the holder thereof.

Han Decl. of 5/2/02, ¶ 6. Notably, these same statutory limitations existed under Japanese law as considered by the court in *Alpex.* "[P]rior to January 1, 1998, documents held by parties in litigation were not generally subject to mandatory production under Article 312 of the Japanese Code, except in three instances not applicable here." *VLT Corp. v. Unitrode Corp.,* 194 F.R.D. 8, 17 (D.Mass.2000) (upholding claims of privilege as to communications with Japanese patent agents). On January 1, 1998 the Japanese Code was amended to allow for liberal discovery similar to the practices in the United States. *Id.* Even under those new discovery rules, documents reflecting communications with patent attorneys and patent agents in Japan are not subject to production. *Id.*

Andrx and Astra that would under Korean law entitle Andrx to demand their delivery or inspection. (Han Decl. of 5/2/02, ¶¶ 7–9; Han Decl. of 5/6/02, ¶ 10.) Thus, if this court were to apply Korean law to the question of whether these documents should be produced in this case, the court would not require production of any of these documents. (*See* Han Decl. of 5/2/02, ¶ 10.)

Andrx correctly points out, however, that this court should not apply the Korean law of discovery, since law regarding document disclosure is procedural. (*See* Letter from Andrx to court of 5/19/02, at 3.) Courts use choice-of-law rules to determine whether to apply another forum's substantive law but always use their own procedural rules. *American Dredging Co. v. Miller,* 510 U.S. 443, 453–55, 114 S.Ct. 981, 127 L.Ed.2d 285 (1994). The liberal principles of Rule 26 of the Federal Rules of Civil Procedure are clearly applicable even in cases where the documents at issue were created in foreign countries. *Cf. Societe Nationale Industrielle Aerospatiale v. United States District Court for the S.D. Iowa,* 482 U.S. 522, 540, 107 S.Ct. 2542, 96 L.Ed.2d 461 (1987); *In re Jenoptik, AG,* 109 F.3d 721, 723 (Fed.Cir. 1997); *Dietrich v. Bauer,* 95 Civ. 7051, 2000 WL 1171132, at *2, *5 (S.D.N.Y. Aug.16, 2000) (rejecting contention that foreign discovery would have to be used) ("[A] district court has the power to impose discovery under the Federal Rules of Civil Procedure when it has personal jurisdiction over the foreign party.").

Accordingly, this court agrees with Andrx that discovery of the Korean documents is governed by the Federal Rules of Civil Procedure. It does not agree, however, that the absence of Korean attorney-client privilege and work product provisions requires this court to order the wholesale production of all of the Korean documents in their entirety. To do so would violate principles of comity and would offend the public policy of this forum. The fact is that vastly different discovery practices, which permit only minimal discovery, are applicable to civil suits conducted in Korea. Indeed, none of the documents at issue here would be discoverable in a Korean civil suit. Under these circumstances, where virtually no disclosure is contemplated, it is hardly surprising that Korea has not developed a substantive law relating to attorney-client privilege and work product that is co-extensive with our own law. It also seems clear that to apply Korean privilege law, or the lack thereof, in a vacuum-without taking account of the very limited discovery provided in Korean civil cases-would offend the very principles of comity that choice-of-law rules were intended to protect. *See United States v. First National City Bank,* 396 F.2d 897, 901 (2d Cir.1968) ("[T]he courts must take care not to impinge upon the prerogatives and responsibilities of the political branches of the government in the extremely sensitive and delicate area of foreign affairs.... Mechanical or overbroad rules of thumb are of little value; what is required is a careful balancing of the interests involved and a precise understanding of the facts and circumstances of the particular case.") (internal citations omitted).

Further, ordering discovery without any protection also offends the public policy of this forum, which promotes full discovery but, at the same time, prevents disclosure of privileged documents. If the court were to rule without taking Korea's discovery practices into account, the court would be required to order complete disclosure of all of the Korean documents, many of which would be protected under either the attorney-client privilege or work product doctrine as applied in this jurisdiction. Contrary to the policies of upholding or expanding privilege to protect documents whenever they would be protected in other countries, *see Golden Trade,* 143 F.R.D. at 520–23 (finding that claimant's "showing adequately establishes that the communications were covered by the attorney-client privilege in American terms" so that the court need not even resort to foreign law), application of foreign privilege law in this case would require disclosure of many documents (1) that are protected from disclosure under American law and (2) that would not be discoverable under Korean law. Therefore, the court will apply its own privilege law to the Korean documents, even though the communications do not "touch base" with the United States.

## C. APPLYING AMERICAN LAW

### 1. ATTORNEY–CLIENT PRIVILEGE

▮ The attorney-client privilege is intended to encourage clients to be forthcoming and candid with their attorneys so that the attorney is sufficiently well-informed to provide sound legal advice. *See Upjohn Co. v. United States*, 449 U.S. 383, 389, 101 S.Ct. 677, 66 L.Ed.2d 584 (1981). The Second Circuit has provided the following definition of the attorney-client privilege:

> (1) Where legal advice of any kind is sought (2) from a professional legal advisor in his capacity as such, (3) the communications relating to that purpose, (4) made in confidence (5) by the client, (6) are at his instance permanently protected (7) from disclosure by himself or by the legal advisor, (8) except the protection be waived.

*In re Grand Jury Subpoena Duces Tecum Dated Sept. 15, 1983*, 731 F.2d 1032, 1036 (2d Cir.1984); *United States v. Kovel*, 296 F.2d 918, 921 (2d Cir.1961). The attorney-client privilege "should be strictly confined within the narrowest possible limits underlying its purpose." *United States v. Goldberger & Dubin, P.C.*, 935 F.2d 501, 504 (2d Cir.1991) (citations omitted). The party claiming the benefit of the attorney-client privilege has the burden of establishing all essential elements. *von Bulow v. von Bulow*, 811 F.2d 136, 144 (2d Cir.), *cert. denied*, 481 U.S. 1015, 107 S.Ct. 1891, 95 L.Ed.2d 498 (1987); *see, e.g., In re Horowitz*, 482 F.2d 72, 82 (2d Cir.), *cert. denied*, 414 U.S. 867, 94 S.Ct. 64, 38 L.Ed.2d 86 (1973). The claimant's burden cannot be "discharged by mere conclusory or ipse dixit assertions." *von Bulow*, 811 F.2d at 146 (quoting *In re Bonanno*, 344 F.2d 830, 833 (2d Cir.1965)).

▮ "The privilege only protects disclosure of communications; it does not protect disclosure of the underlying facts by those who communicated with the attorney." *Upjohn*, 449 U.S. at 396, 101 S.Ct. 677; *In re Six Grand Jury Witnesses*, 979 F.2d 939, 944 (2d Cir.1992), *cert. denied*, 509 U.S. 905, 113 S.Ct. 2997, 125 L.Ed.2d 691 (1993). In order to be privileged, a communication either must be from a client to an attorney or, in the case of communications from an attorney to a client, must include confidential information conveyed to the lawyer from the client. "[T]he central inquiry is whether the communication is one that was made *by a client to an attorney* for the purpose of obtaining legal advice or services." *Spalding*, 203 F.3d at 805 (citations omitted). The request for confidential legal assistance need not be expressly stated when the request is implied. *See Spalding*, 203 F.3d at 806 (citing *In re Sealed Case*, 737 F.2d 94, 102 (D.C.Cir.1984)).

▮ "Attachments which do not, by their content, fall within the realm of the privilege cannot become privileged by merely attaching them to a communication with an attorney." *Sneider v. Kimberly–Clark Corp.*, 91 F.R.D. 1, 4 (N.D.Ill.1980). However, the mere fact that a document contains some public or nonconfidential information does not necessarily make the document discoverable. *Knogo Corp. v. United States*, 213 U.S.P.Q. 936, 941, 1980 WL 39083 (1980) ("If an attorney-client communication could be discovered if it contained information known to others, then it would be the rare communication that would be protected and, in turn, it would be the rare client who would freely communicate to an attorney.") Similarly, the inclusion of technical information or references to prior art does not render the document discoverable. *See Spalding*, 203 F.3d at 806 (citing *Knogo*, 213 U.S.P.Q. at 941) ("[R]equests for legal advice on patentability necessarily require the evaluation of technical information such as prior art.")

### 2. WORK PRODUCT PROTECTION

▮ The scope of the work product doctrine is set forth in Federal Rule of Civil Procedure 26(b)(3), which states in relevant part:

> [A] party may obtain discovery of documents and tangible things otherwise discoverable ... and prepared in anticipation of litigation or for trial by or for another party or by or for that other party's representative ... only upon a showing that the party seeking discovery has substantial need of the materials in the preparation of the party's case and that the party is unable without undue hardship to obtain the substantial equivalent of the materials by

other means. In ordering discovery of such materials when the required showing has been made, the court shall protect against disclosure of the mental impressions, conclusions, opinions, or legal theories of an attorney or other representative of the party concerning the litigation.

Generally, "[t]hree conditions must be met in order to earn work product protection. The material must (1) be a document or tangible thing, (2) that was prepared in anticipation of litigation, and (3) was prepared by or for a party, or by or for his representative." *In re Grand Jury Subpoenas Dated Dec. 18, 1981 & Jan. 4, 1982,* 561 F.Supp. 1247, 1257 (E.D.N.Y.1982); *see Weinhold v. Witte Heavy Lift, Inc.,* 90 Civ. 2096, 1994 WL 132392, at *2 (S.D.N.Y. Apr.11, 1994). In *United States v. Adlman,* 134 F.3d 1194, 1202 (2d Cir.1998), the Second Circuit observed that "documents should be deemed prepared 'in anticipation of litigation,' and thus within the scope of the Rule, if 'in light of the nature of the document and the factual situation in the particular case, the document can fairly be said to have been prepared or obtained because of the prospect of litigation.'" Although a document does not lose protection "merely because it is created in order to assist with a business decision," the work-product doctrine does not extend to "documents that are prepared in the ordinary course of business or that would have been created in essentially similar form irrespective of the litigation." *Id.*

■ Generally, work product immunity continues to protect documents even when the litigation is completed. *United States v. Pfizer Inc.,* 560 F.2d 326, 334 (8th Cir.1977) ("What is needed, if we are to remain faithful to the articulated policies of *Hickman [v. Taylor,* 329 U.S. 495, 67 S.Ct. 385, 91 L.Ed. 451 (1947)] , is a perpetual protection for work product, one that extends beyond the terminated litigation for which the documents were prepared."); *In re Murphy,* 560 F.2d 326, 334–35 (8th Cir.1977); *Duplan Corp. v. Moulinage et Retorderie de Chavanoz,* 487 F.2d 480, 483–84 (4th Cir.1973). However, "[t]o the extent that the need for protection of work product *does decrease* after the end of a suit, that fact might in some cases lower the threshold for overcoming the

work-product barrier." *FTC v. Grolier, Inc.,* 462 U.S. 19, 31, 103 S.Ct. 2209, 76 L.Ed.2d 387 (1983) (Brennan, J., concurring) (emphasis added); *see also United States v. IBM,* 66 F.R.D. 154, 178 (S.D.N.Y.1974).

■ Even where the applicability of the work product doctrine has been established, factual material may be ordered produced "upon a showing of substantial need and inability to obtain the equivalent without undue hardship." *Upjohn,* 449 U.S. at 400, 101 S.Ct. 677. Such discoverable factual material must be distinguished, however, from the mental impressions, conclusions, or legal theories of a party's attorney or other representative. As to those documents, "a far greater showing is required to pierce the doctrine's protection, and there is some authority that the protection afforded such opinion work product may be absolute." *Softview,* 2000 WL 351411, at *4 (citations omitted).

### 3. DOCUMENTS PROTECTED BY ATTORNEY CLIENT PRIVILEGE

The court makes the following findings concerning documents that are protected in their entirety from disclosure by the attorney-client privilege:

■ The first category of documents consists of document 245–1. This document is a confidential communication between Astra employees, including in-house lawyers, and Kim & Chang lawyers. The document relates to advice solicited by or given to Astra regarding Astra's Korean legal proceedings with CKD. It contains advice and requests for advice regarding Korean court procedure, KIPO procedure, discussions of strategy regarding Korean legal proceedings with CKD, and other confidential information. Astra's claim of attorney-client privilege in this document is sustained.

■ The second category of documents consists of documents 263–1–1, 430–1, 484–1, 1550, 2534, and 2585. These documents are work product documents that reflect a lawyer's involvement, such as draft pleadings, draft briefs, and other drafts or documents prepared by lawyers. Many of these docu-

ments also contain handwritten annotations and comments that reflect legal advice or requests for legal advice. Some of the documents were prepared by Kim and Chang or Astra's in-house lawyers, while others were prepared by technical advisors to the legal team, for the purpose of providing legal advice during Astra's Korean legal proceedings with CKD. Astra's claims of attorney-client privilege in these documents are sustained.

■ The third category of documents consists of documents numbered 116–1, 197–1, 200–2, 211–2, 223, 223–1, and 836–1. These documents contain scientific information, including reports, analyses, and other scientific data communicated between internal Astra scientists and Astra in-house lawyers and forwarded to Kim and Chang lawyers or between internal Astra scientists and Kim and Chang lawyers. These documents were prepared in response to requests by Kim and Chang lawyers, or Astra lawyers on behalf of Kim and Chang lawyers, to conduct scientific investigations of CKD's products and to provide scientific information for the purpose of soliciting legal advice regarding Astra's Korean legal proceedings with CKD. Additionally, documents 2421 and 2587 are communications between an Astra employee and Astra's consulting expert [12] discussing scientific testing methods for the purpose of providing confidential information to Astra's counsel and soliciting legal advice regarding Astra's Korean legal proceedings with CKD. Astra's claims of attorney-client privilege in these documents are sustained.

■ The fourth category of documents consists of documents 521, 526, 527, 543, 580, 587, and 588. These documents are confidential communications between Astra employees and Astra's in-house lawyers or between Astra employees, including in-house lawyers, and Astra's outside counsel in the United States. The documents related to advice solicited by or given to Astra regarding Astra's legal proceedings in the United States, the prosecution of various patent applications in the PTO, discussions of strategy, and other confidential information. Astra's claims of attorney-client privilege in these documents are sustained.

## 4. DOCUMENTS PROTECTED BY THE WORK PRODUCT DOCTRINE

The court makes the following findings concerning documents that are protected in their entirety from disclosure by the work product doctrine:

Documents 217, 235, 235–1, 237–1, 712–1, 712–2, 731–1, 775–2, 984A, 990, 1544, 2134, relate to the litigation conducted in Korea between Astra and CKD. Each of the documents was prepared or obtained because of either ongoing litigation or the prospect of additional litigation. Astra's claims of work product protection for these documents are sustained.

## 5. DOCUMENTS PRODUCED IN THEIR ENTIRETY

Astra has indicated that documents 246 and 2142 are copies of a letter from Kim and Chang to Astra's in-house counsel Ivan Hjertman concerning Dr. Rhodes' testimony in Astra's preliminary injunction action against CKD. (Ryberg Decl. of 5/17/02, ¶ 9.) Document 1525 is apparently a portion of that same letter. (*Id.*) The declaration provided with Astra's *in camera* submission states that *"[t]his document was produced to*

---

12. Some of the challenged documents referred to in this and other sections of this Opinion include communications sent to or from C.T. Rhodes. Dr. Rhodes was, and still is, a technical consultant for Astra in its worldwide litigations relating to omeprazole. Andrx has argued that all communications involving Dr. Rhodes must be disclosed because Dr. Rhodes testified as an expert during Astra's Korean proceedings. However, only some of Dr. Rhodes' work related to actual testimony. (*See, e.g.*, Ryberg Decl. of 5/17/02, ¶¶ 7, 8, 10, 12.) Dr. Rhodes submitted an affidavit in connection with an Astra/CKD litigation on June 3, 1994, and subsequently testified on June 10, 1994. (Ryberg Decl. of 5/17/02, ¶ 2.) Dr. Rhodes did not testify in the Korean matters after that date. Accordingly, some communications with Dr. Rhodes relate to his work as a non-testifying expert. Andrx is only entitled to documents that formed the basis for his testimony. Some of the documents Andrx seeks, however, were created after Dr. Rhodes testified in the Korean proceedings. *Id.* Those documents could not form the basis for his opinions. Thus, documents dated after Dr. Rhodes testified in Korea on June 10, 1994, are not discoverable because Dr. Rhodes was a consulting expert at that time.

Andrx." (*Id.*) Although Astra asserts that the production of one of the three documents eliminates the need for *in camera* review, it is unclear to the court which of the three documents was produced and whether all three of the documents come from the same file. Even though the documents were challenged by Andrx, Astra did not provide these documents to the court in an *in camera* submission, so the court is unable to determine these issues. Nevertheless, it is clear to the court that all three documents cannot be identical-document 1525 is only a portion of the other two. Under these circumstances, Astra has failed to meet its burden, and the court sustains Andrx's challenges to all three documents. Astra must produce documents 246, 1525, and 2142, regardless of whether one or all of them have been produced previously. (*See* Order of 5/27/02, at 1.)

■ Astra is asserting attorney-client privilege, but not work product protection, for documents 531, 531–1, 533–1, 533–2, 535, 827, and 2289. The court finds that these documents do not contain confidential information or legal advice rendered by an attorney. Many of the documents are simply requests for or transmittals of publicly available information. The court overrules Astra's claims of attorney-client privilege for these documents. Since Astra has not claimed work product protection for these documents, they must be produced in their entirety. (*See* Order of 5/27/02, at 1–2.)

Astra is also asserting attorney-client privilege, but not work product protection for document 334. Document 334 is a communication in Swedish between Astra employees in Sweden who serve as in-house counsel. Because Astra failed to provide a translation of the document;[13] the court is unable to determine whether the document contains any confidential communications. Astra has not met its burden to sustain the privilege for document 334. *See Burroughs Wellcome Co. v. Barr Laboratories, Inc.*, 143 F.R.D. 611, 622 (E.D.N.C.1992); *cf. Saxholm AS v. Dynal, Inc.*, 164 F.R.D. 331 (E.D.N.Y.1996).

The document must be produced in its entirety. (*See* Order of 5/27/02, at 2.) Like document 334, Astra has failed to provide a translation for document 2605. Astra has indicated that a different version of the document, without a note handwritten in Swedish that is present on document 2605, was already produced to Andrx. Since the only difference between the document already produced and this document is the handwritten note that the court is unable to translate, Astra has failed to meet its burden to support nondisclosure under either the attorney-client privilege or work product protection. Document 2605 must be produced in its entirety. (*See* Order of 5/27/02, at 1.)

For documents 578–1, 580–1, 1524, 1546, and 2133, the court sustains Andrx's challenges to Astra's claims of both attorney-client privilege and work product protection. These documents must be produced in their entirety. (*See* Order of 5/27/02, at 1–2.)

### 6. DOCUMENTS PRODUCED IN REDACTED FORM

Astra's fifth *in camera* submission consisted solely of document 1627, (*see* Letter from Astra to court of 5/29/02), which was requested after this court issued its initial order on May 27, 2002, requiring Astra to produce some of the challenged documents. The document, a facsimile letter sent from Kim and Chang to Ivan Hjertman discussing CKD's 1992 Korean patent application and its 1995 publication, contains information extremely relevant to the issue of inventorship and the knowledge held by the inventors of the '281 patent about those Korean documents. Andrx had been unable to obtain that same information through deposition questioning. The court understands that it is not always appropriate to redact documents for the sake of producing non-privileged portions. *See Spalding*, 203 F.3d at 806. Nevertheless, "[a] party should not be allowed to conceal critical, non-privileged, discoverable information, which is uniquely in the knowledge of the party and which is not obtainable from any other source, simply by imparting the

---

**13.** In her Declaration dated May 17, 2002, Ms. Ryberg indicates that she has included a translation she prepared of document 334. (Ryberg Decl. Of 5/17/02, ¶ 27.) However, the translation is not actually included in the submissions.

information from its attorney and then attempting to hide behind the work product doctrine after the party fails to remember the information." *Xerox Corp. v. IBM,* 64 F.R.D. 367, 381–82 (S.D.N.Y.1974). At the very least, the documents should be produced in a redacted form. *Id.; see In re Missouri Dep't of Natural Resources,* 105 F.3d 434, 436 (8th Cir.1997). Indeed, "[i]f such a distillation becomes impossible" then "the entire comments of the documents must be produced." *Xerox,* 64 F.R.D. at 381. Given the highly relevant nature of the underlying facts contained within this communication and Andrx's inability to obtain the information through depositions, the court produced a redacted copy to Andrx at a conference on May 30, 2002.[14] By redacting the document, the court was able to remove all material contained within the letter that could be viewed as either privileged or protected by work product doctrine.

In its Order of May 27, 2002, the court ordered the production of five documents in redacted form. (*See* Order of 5/27/02, at 2.) Astra asserts both attorney-client privilege and work product protection for documents 578 and 623, but Astra asserts only attorney-client privilege for documents 530, 533, and 535–1. The ordered redactions were as follows:

> Document 530, redact the last paragraph ("Please . . . date");
>
> Document 533, redact the last paragraph ("Please . . . date") in both the document and the confirmation sheet;
>
> Document 535–1, produce only pages 01497–01504 (the translation), but not page 01496;
>
> Document 578, redact the last paragraph (the final two sentences preceding "Best regards");
>
> Document 623, redact the last paragraph (the final two sentences preceding "Best regards").

Once the stated redactions are made, the court finds that the attorney-client privilege is inapplicable to the remainder of the five documents. Moreover, the remaining portions of documents 578–1 and 623 are not shielded from production under the work product doctrine. All five documents must be produced in their redacted form.

## V.  CONCLUSION

For the foregoing reasons, Astra was directed to produce the following documents in their entirety: 246, 334, 531, 531–1, 533–1, 533–2, 535, 578–1, 580, 827, 1524, 1525, 1546, 2133, 2142, 2289, and 2605. Astra was further directed to produce the following documents in redacted form: 530, 533, 535–1, 578, 623, and 1627.

The court has received the documents as submissions made by Astra *in camera* and has reviewed the documents *in camera*. Astra is directed to file one copy of each of the five *in camera* submissions with the Clerk's Office under seal.

SO ORDERED:

---

14. On page one of document 1627, the court redacted the last sentence of the first paragraph and the second and third paragraphs in their entirety. On the second page of document 1627, the court redacted the second full paragraph, which appeared between the claim language and the closing, "With best regards."